**Eugene F. KIMBROUGH, Petitioner,**

v.

**M. BRADT, Superintendent, Respondent.**

**No. 9:12–CV–0034 (DNH).**

United States District Court, N.D. New York.

June 11, 2013.

Eugene F. Kimbrough, Stormville, NY, Petitioner, pro se.

Eric T. Schneiderman, New York State Attorney General, Michelle E. Maerov, Esq., Ass't Attorney General, New York, NY, for Respondent.

## DECISION AND ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

Petitioner Eugene F. Kimbrough has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights.

1. Petitioner has appended several documents to his petition which are not consecutively paginated. Accordingly, reference is made to

Dkt. No. 1, Petition ("Pet.").[1] Petitioner's state custody arises from a judgment of conviction entered in Onondaga County Court, following a jury trial, of attempted aggravated assault upon a police officer, burglary, and criminal possession of stolen property. Pet. at 1. Respondent has filed a response to the petition, a memorandum of law, and the relevant state court records. *See* Dkt. No. 11, Response; Dkt. No. 11–1, Respondent's Memorandum of Law ("Resp't Mem."); Dkt. Nos. 13–14, State Court Records. Petitioner has also filed a reply. Dkt. No. 16, Petitioner's Traverse ("Traverse"). For the reasons that follow, the petition will be denied and dismissed.

## II. BACKGROUND

### A. Petitioner's Crime and Arrest

On January 11, 2005, while responding to a silent burglar alarm at 200 Twin Oaks Drive in Dewitt, police officers observed petitioner exit an unoccupied building. *See* Dkt. No. 13, Ex. H, Petitioner's Appellate Brief ("Appellant Br.") at 2. Petitioner ignored a directive to stop, entered a stolen vehicle parked on the premises, and drove directly toward at least one officer on the scene. *Id.* The car accelerated at a fast rate, and the responding officers discharged their weapons into the vehicle in an effort to stop petitioner. *Id.* at 3. Petitioner was shot several times. *Id.* The vehicle eventually came to rest in a ditch, and petitioner was arrested. *Id.*

As a result of the foregoing, petitioner was charged with attempted aggravated assault on a police officer, third-degree burglary, and criminal possession of stolen property. *See* Appellant Br. at 3.[2]

the page numbers assigned by the court's electronic filing system.

2. Petitioner was also charged with third-degree grand larceny; however, prior to the

Following a jury trial in which petitioner did not contest the burglary or stolen property charges, petitioner was convicted on all counts. *See* Appellant Br. at 4. Petitioner attempted to defend the assault charge on the theory that he was not acting with intent to cause physical injury to any responding officer, but rather was attempting to flee the scene while being fired upon. *Id.* The trial court sentenced petitioner to a total aggregate sentence of twenty-six years and six months. *Id.*

## B. Direct Appeal and Collateral Attacks on the Verdict

On January 9, 2009, petitioner moved to vacate his conviction pursuant to N.Y.Crim. Proc. Law section 440.10. *See* Dkt. No. 13, Ex. A, Motion to Vacate Judgment ("Mot. to Vacate") at 2.[3] In his motion, petitioner argued that (1) his conviction was obtained through the introduction of false evidence; (2) certain "material" facts relative to the sufficiency of the evidence were not included in the record; (3) each of his three appointed attorneys provided ineffective assistance; (4) the jury engaged in misconduct by conducting their deliberations in an elevator; and (5) the trial court conducted an improper arraignment where he was denied the right to enter a plea. *Id.* at 6–43.

On April 9, 2009, the trial court denied petitioner's motion in full. *See* Dkt. No. 13, Ex. D, Decision and Order. First, the court held that petitioner's legal sufficiency and prosecutorial misconduct claims could not be raised in a motion to vacate since "sufficient facts appear on the record ... to permit an adequate review on ap-

peal." *Id.* at 2 (citing N.Y.Crim. Proc. Law § 440.10(2)(b)). The court next dismissed petitioner's ineffective assistance claims because they were unsupported by sworn allegations of fact. *Id.* Alternatively, the court held that these claims had no merit. *Id.* at 2–3. Finally, the court held that petitioner's contention that the jury deliberated in the elevator was unsupported by the record. *Id.* at 4. The court did not address petitioner's challenge to his arraignment. *See id.* at 1–4.

Petitioner sought leave to appeal this decision to the Appellate Division, Fourth Department. *See* Dkt. No. 13, Ex. E, Motion for Leave to Appeal.[4] In his leave application, however, petitioner raised only the following issues: (1) he received ineffective assistance from counsel; and (2) his conviction and indictment were procured through false testimony and prosecutorial misconduct. *Id.* at 10–27. On January 19, 2010, the Appellate Division denied petitioner's leave application. *See* Dkt. No. 13, Ex. G, Appellate Division Order Denying Leave.

Petitioner also filed a direct appeal with the Appellate Division, in which his assigned appellate counsel argued that: (1) the conviction for attempted assault was based on legally insufficient evidence, or, in the alternative, was against the weight of the evidence; and (2) petitioner's sentence was excessive. *See* Appellant Br. at 5, 20. Petitioner submitted a pro se supplemental brief, which raised the following additional claims: (1) the trial court deprived him of his right to self-representation; (2) he did not receive the effective

___

commencement of trial, the prosecution voluntarily dismissed this count. *See* Resp't Mem. at 2.

**3.** Petitioner's motion and attached memorandum of law are not consecutively paginated. Accordingly, reference is made to the page

numbers assigned by the court's electronic filing system.

**4.** For the sake of clarity, reference is made to the page numbers assigned by the court's electronic filing system.

assistance of trial counsel; and (3) he was deprived of his right to representation during arraignment. *See* Dkt. No. 13, Ex. J, Appellant's Pro Se Brief at 4, 9–14.

On November 13, 2009, the Appellate Division affirmed petitioner's conviction. *See People v. Kimbrough,* 67 A.D.3d 1340, 1340–41, 887 N.Y.S.2d 908 (N.Y.App.Div. 4th Dep't 2009). First, the court held that petitioner had "failed to preserve for our review his contention that the conviction [of attempted assault] is not supported by legally sufficient evidence inasmuch as his motion for a trial order of dismissal with respect to that [crime] was not specifically directed at the grounds advanced on appeal." *Id.* at 1340, 887 N.Y.S.2d 908 (citing *People v. Gray,* 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (1995)). The court further held that the conviction was not against the weight of the evidence when considering the elements of the crime as charged to the jury. *Kimbrough,* 67 A.D.3d at 1341, 887 N.Y.S.2d 908. As to his sentence, the court held that it was "not unduly harsh or severe." *Id.* The court did not address the claims raised by petitioner pro se because his brief was untimely submitted. *See* Dkt. No. 13, Ex. O, Petitioner's Letter to Court of Appeals, Jan. 23, 2010.

Petitioner sought leave to appeal the arguments raised in his counseled appellate brief. *See* Dkt. No. 13, Ex. M, Request for Leave to Appeal. On March 4, 2010, the New York Court of Appeals denied the application for leave to appeal. *See* Dkt. No. 13, Ex. Q, Certificate Denying Leave.

On March 29, 2011, petitioner filed a pro se motion for a writ of error coram nobis with the Appellate Division. *See* Dkt. No. 13, Ex. R, Motion for Writ of Error Coram Nobis. Petitioner argued that his appellate counsel was ineffective for failing to submit the following meritorious claims on

direct appeal: (1) whether petitioner was deprived of his constitutional right to self-representation; (2) whether petitioner's trial counsel provided ineffective assistance; and (3) whether the prosecution withheld exculpatory evidence. *Id.* at 4–15.

On July 11, 2011, the Appellate Division denied petitioner's motion. *See* Dkt. No. 13, Ex. U, Order Denying Coram Nobis Motion. The New York Court of Appeals thereafter denied petitioner's request for leave to file an appeal of this motion. *See* Dkt. No. 13, Ex. V, Order Denying Leave. This action habeas action followed.

### C. Petition

In the current petition, petitioner contends that: (1) he was denied "due process" as the result of several trial court rulings; (2) trial counsel provided ineffective assistance due to a conflict of interest; (3) his conviction was secured through the introduction of false evidence; and (4) the trial court wrongfully denied his motion to vacate, and the Appellate Division made an erroneous ruling in denying his appeal. *See* Pet. at 4–5.

## III. DISCUSSION

### A. Standard of Review

Federal habeas corpus petitions are governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which sets forth a rigorous standard of review with regard to petitions filed by state prisoners. *See Williams v. Taylor,* 529 U.S. 362, 402–03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under AEDPA, a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) was based on an unrea-

sonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2); *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

Though the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are analyzed .independently, both limit the source of the "clearly established law" to the jurisprudence of the Supreme Court. *Williams,* 529 U.S. at 404–05, 412, 120 S.Ct. 1495. The Supreme Court has noted that a state court decision will be "contrary to" established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if a state court "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a" different result. *Id.* at 405–06, 120 S.Ct. 1495. With respect to the "unreasonable application" clause, a federal court may grant a petitioner's writ of habeas corpus "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams,* 529 U.S. at 413, 120 S.Ct. 1495. The state court's application, however, must be objectively unreasonable, which is a "higher threshold" than "incorrect." *Knowles v. Mirzayance,* 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

When reviewing a habeas petition, a federal court presumes that the factual determinations of the state court are correct. *Schriro,* 550 U.S. at 473–74, 127 S.Ct. 1933. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Schriro,* 550 U.S. at 473–74, 127 S.Ct. 1933. The presumption of correctness, which applies to "historical

facts, that is, recitals of external events and the credibility of the witnesses narrating them," will be overturned only if the material facts were not adequately developed by the state court, or if the factual determination is not adequately supported by the record. *Smith v. Mann,* 173 F.3d 73, 76 (2d Cir.1999) (citation and internal quotation marks omitted).

Furthermore, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson,* —— U.S. ——, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) (per curiam) (citations and internal quotation marks omitted). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro,* 550 U.S. at 473, 127 S.Ct. 1933. However, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir.2006)).

Finally, it is worth noting that in habeas cases the petitioner bears the burden of establishing that he is entitled to habeas relief. *See Skaftouros v. United States,* 667 F.3d 144, 158 (2d Cir.2011) ("[I]t is the petitioner who bears the burden of proving that he is being held contrary to law[.]").

**B. Timeliness**

Under AEDPA, federal habeas petitions challenging the judgment of a state court are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). The

one-year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review, or by the expiration of the time to seek direct review. *See* 28 U.S.C. § 2244(d)(1)(A).[5] If a direct appeal is filed, the judgment of conviction becomes final ninety days after the New York Court of Appeals denies leave to appeal. *Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir.2001).

■ AEDPA, however, contains a statutory tolling provision which provides that "[t]he time during which a properly filed application for State post-conviction or collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). In other words, AEDPA excludes from the limitations period the time in which properly filed state court post-conviction motions are pending, including the time during which an appeal from the denial of such a motion was taken. *See Bennett v. Artuz*, 199 F.3d 116, 120–21 (2d Cir.1999).

In this case, the New York Court of Appeals denied petitioner's application for leave to appeal his direct appeal on March 4, 2010. *See* Dkt. No. 13, Ex. Q, Certificate Denying Leave. As such, his convic-

tion became final ninety days later, on June 2, 2010, and the one-year statute of limitations began to run on that date. On April 29, 2011, with thirty-four days remaining in the limitations period, petitioner filed a writ of error coram nobis in state court. *See* Dkt. No. 13, Ex. R, Motion for Writ of Error Coram Nobis. The statute of limitations was then tolled until the New York Court of Appeals denied leave appeal this motion on November 28, 2011. *See* Dkt. No. 13, Ex. V, Order Denying Leave. The statute of limitations then began to run again and expired thirty-four days later on January 2, 2012.[6] Thus, according to the AEDPA, petitioner had until January 2, 2012, to timely file a federal petition for habeas corpus.

While the petition was filed with the court on January 9, 2012, *see* Pet. at 1, under the "mailbox rule" an incarcerated petitioner is deemed to have filed his petition on the date he delivered it to prison officials for mailing. *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir.2001). In this case, however, it is unclear exactly when the petition was delivered for mailing. While it was signed and dated December 27, 2011, the mailing envelope used by petitioner is postmarked January 4, 2012. *See* Pet. at 6, 16. If petitioner gave the peti-

---

5. Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed, the date on which the Supreme Court initially recognized the constitutional right on which the petitioner bases his habeas application if that right was newly recognized and made retroactively applicable, or the date on which the petitioner could have discovered the factual predicate for the claim or claims presented through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B), (C), and (D). None of the alternative dates appear applicable in this case, and thus they will not be discussed.

6. Thirty-four days from November 28, 2011, is actually Sunday, January 1, 2012. However, pursuant to Rule 6 of the Federal Rules of Civil Procedure, the limitations period is extended an extra day under such circumstances. *See* Fed.R.Civ.P. 6(a) (in calculating any period of time, "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"); *Ryan v. Griffin*, No. 9:10–CV–0395 (MAD/ATB), 2011 WL 6934269, at *3 (N.D.N.Y. Dec. 30, 2011) (noting that Rule 6 of the Federal Rules of Civil Procedure governs the method for computing time periods, including the limitations period for federal habeas actions).

tion to prison authorities for mailing on January 4, 2012, it would be untimely by two days. Nonetheless, in light of petitioner's contention that the petition was delivered on the date of his endorsement, *see* Traverse at 2, he will be given the benefit of the doubt and December 27, 2011, will be used as the filing date. *See Ryan v. Superintendent*, No. 9:10–CV–0395 (MAD/ATB), 2011 WL 6934272, at *2 n. 2 (N.D.N.Y. Oct. 6, 2011) (using the date that petitioner signed his petition as the filing date, notwithstanding that it was postmarked several days later), *report and recommendation adopted by*, 2011 WL 6934269 (N.D.N.Y. Dec. 30, 2011). Petitioner could conceivably have provided the petition to prison officials on the same day it was signed, and it just took a few days to process and mail. This slight processing delay is certainly possible, if not likely, given this transpired during the December holiday season. As such, it is found that the petition is timely, and the merits of petitioner's claims are addressed below.

### C. Ground One

Petitioner first argues that he was denied "due process" because (1) his arraignment was improper; (2) he was prohibited from entering a plea; and (3) he was deprived of his right to self-representation. *See* Pet. at 4. As discussed below, these claims are procedurally barred from review.

■■■■■■ Under AEDPA, an application for a writ of habeas corpus may not be granted until a petitioner has exhausted all available state court remedies for his federal claims. *See* 28 U.S.C. § 2254(b)(1). To satisfy this exhaustion requirement, a petitioner must "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir.1997) (citation omitted). A claim is not properly exhausted when it is untimely, or if it is submitted to the state court by way of an incorrect procedural mechanism and never addressed. *See Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir.1994); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

■■■■■ Analyzed under these standards, petitioner's claims set forth under Ground One are unexhausted. Although petitioner attempted to put these arguments before the Appellate Division in a pro se supplemental brief, *see* Dkt. No. 13, Ex. J, Appellant's Pro Se Brief, he did not submit this brief on time and the Appellate Division declined to review his claims, *see* Dkt. No. 13, Ex. O, Petitioner's Letter to Court of Appeals, Jan. 23, 2010. By failing to properly present these claims on direct appeal, they are rendered unexhausted for federal habeas purposes. *See Gutierrez v. Bradt*, No. 1:11–CV–1034, 2012 WL 4722266, at *10 (W.D.N.Y. Oct. 3, 2012) (finding petitioner's habeas claims unexhausted because they were untimely raised in a pro se brief and the Appellate Division precluded review on that basis); *United States ex rel. LaSalle v. Smith*, 632 F.Supp. 602, 605 (E.D.N.Y.1986) ("[T]he same considerations of policy and practicality which underlie the 'exhaustion' doctrine are as much implicated when a petitioner chooses the wrong procedure to press his claims as when he fails to make any effort to obtain relief.").[7]

7. Although petitioner also argued that his ar- raignment was improper in his motion to

 Where a petitioner has failed to exhaust his federal claims, but the state court to which he must present those claims would find them procedurally barred, a federal habeas court must deem the claims to be exhausted and procedurally defaulted. *See Clark v. Perez*, 510 F.3d 382, 390 (2d Cir.2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Defaulted claims are not subject to habeas review unless the petitioner can demonstrate either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

 Petitioner's claims contained under Ground One are also procedurally defaulted. Petitioner cannot now raise these unexhausted claims because he has already used his one direct appeal and application to the New York Court of Appeals to which he is entitled. *See* N.Y. Comp. Codes R. & Regs. tit. 22, §§ 600.8(b), 500.20(a) (2013); *Grey*, 933 F.2d at 120–121. Moreover, collateral review of these record-based claims is also foreclosed. *See* N.Y.Crim. Proc. Law § 440.10(2)(c) (motion to vacate must be denied where the claim is a matter of record that could have been raised on direct appeal but unjustifiably was not).

 As such, these defaulted claims may only be reviewed if petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result. *See, e.g., Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011). Showing "cause" usually requires a demonstration of "some external impedi-

ment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The prejudice prong is satisfied " 'not merely [by showing] that errors at … trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' " *Id.* at 494, 106 S.Ct. 2639 (citing *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Finally, the miscarriage of justice prong is satisfied by a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir.2002) ("Actual innocence means factual innocence, not mere legal insufficiency.") (citation and internal quotation marks omitted).

 In this instance, petitioner has offered no good cause to justify his failure to properly present these claims to the Appellate Division. Although petitioner contends that his untimely filing was the result of prison mailing procedures, *see* Dkt. No. 13, Ex. O, Petitioner's Letter to Court of Appeals, Jan. 23, 2010, this argument is unavailing. Under New York law, a defendant is required to take prison mailing procedures into account when filing papers. *See Grant v. Senkowski*, 95 N.Y.2d 605, 605, 721 N.Y.S.2d 597, 744 N.E.2d 132 (2001) (rejecting the "mailbox rule"). He is not entitled to any extension of time because he relies on the prison to complete the mailing. *See Morillo v. Selsky*, 309 A.D.2d 998, 998, 766 N.Y.S.2d 151 (N.Y.App.Div. 3d Dep't 2003). Here, petitioner had until October 15, 2009, to file his pro se appellate brief. *See* Dkt. No. 13,

---

vacate, this claim nonetheless remains unexhausted because petitioner never sought leave to appeal this issue. *See Deberry v. Spitzer*, No. 1:05–CV–5286, 2011 WL 1239999, at *6

(E.D.N.Y. Feb. 17, 2011) (noting that a claim asserted in a motion to vacate is only fully exhausted once it has been presented to the Appellate Division).

Ex. O, Petitioner's Letter to Court of Appeals, Jan. 23, 2010. Petitioner, however, did not tender his brief to prison officials until October 14, 2009, at the earliest. *See* Dkt. No. 13, Ex. J, Appellant's Pro Se Brief at 15. As such, there is no merit to his contention that his untimeliness was caused by an inordinate delay on the part of prison officials. Given that petitioner has failed to allege any good cause for his default, it need not be examined whether any actual prejudice would result. *See Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985) (when a petitioner has failed to establish cause, the court need not also examine the issue of prejudice, since federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated).

 Petitioner has also failed to show that a miscarriage of justice would result absent review of this claim. To establish a "fundamental miscarriage of justice," petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. 2639. In order for an actual innocence claim to be "credible," it must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. Further, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327, 115 S.Ct. 851. "The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable

juror would have found the defendant guilty." *Id.* at 329, 115 S.Ct. 851.

Although petitioner professes his innocence throughout the petition and attached papers, *see* Dkt. No. 13, Ex. O, Petitioner's Letter to Court of Appeals, Jan. 23, 2010, he is unable to establish actual innocence under the standard enunciated above. First, petitioner's conclusory allegations of innocence are unsupported by any evidence. *Schlup,* 513 U.S. at 324, 115 S.Ct. 851 (noting that a claim of actual innocence must be supported by "new reliable evidence"). Moreover, none of the arguments submitted by petitioner could possibly lead any reasonable juror to second guess his guilt.

Without a showing of cause and prejudice, or a fundamental miscarriage of justice, the state court's decision to bar consideration of these claims must be followed. Accordingly, petitioner's claims set forth under Ground One are subject to an unexcused procedural default and will be dismissed on that basis.[8]

### D. Ground Two

 Next, petitioner contends that his trial counsel provided ineffective assistance because "he suffered a conflict of interest" due to billing disputes with the Assigned Counsel Program ("ACP"). *See* Pet. at 4. Petitioner's skeletal petition, however, is insufficient to permit review of this claim. In any event, even looking beyond the petition and relying upon the arguments raised by petitioner in state court, the state courts' rejection of this claim was neither contrary to, nor an unreasonable application of, Supreme Court law.

 Rule 2(c) of the Rules Governing Section 2254 Cases in the United

---

8. Even in the absence of this procedural bar, petitioner's claims nonetheless fail to state any grounds for habeas relief. As respondent correctly argues, petitioner's arguments are meritless and wholly unsupported by the record. *See* Resp't Mem. at 37–43.

States District Courts requires a petitioner to "(1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground[.]" *See also* 28 U.S.C. § 2242 (an application for a writ of habeas corpus "shall allege the facts concerning the applicant's commitment or detention[.]"). It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are insufficient to state a viable claim for habeas relief. *See, e.g., Skeete v. New York,* No. 1:03–CV–2903, 2003 WL 22709079, at *2 (E.D.N.Y. Nov. 17, 2003) ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief."). As such, a claim of ineffective assistance must contain specific factual contentions regarding how counsel was ineffective. *See Hall v. Phillips,* No. 1:04–CV–1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review); *Brown v. New York,* No. 1:04–CV–1087, 2006 WL 3085704, at *7 (E.D.N.Y. Oct. 30, 2006) (vague and conclusory allegations are insufficient to state a viable claim for habeas relief); *Hartley v. Senkowski,* No. 1:09–CV–395, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992) (considering the demanding standard to prove an ineffective assistance of counsel claim, "petitioner's vague and conclusory allegations that counsel did not prepare for trial or object to errors carry very little weight").

In this case, the petition is completely devoid of factual support for this claim. *See* Pet. at 4. Petitioner merely alleges that counsel operated under a conflict of interest. *Id.* He does not specify how counsel's interests diverged from his own with respect to any material factual issue or course of action. *See* Pet. at 4; *Vasquez v. Parrott,* 397 F.Supp.2d 452, 458 (S.D.N.Y.2005) ("Where an ineffective assistance of counsel claim is based on a conflict of interest ... the defendant [must] establish[ ] that ... an actual conflict of interest existed, namely the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action[.]" (citations and internal quotation marks omitted)). Nor does the petition allege any alternative defense not taken up by counsel because of the alleged conflict. *See* Pet. at 4; *Vasquez,* 397 F.Supp.2d at 458 (to establish an actual conflict of interest, a defendant must also show "a lapse in representation demonstrated by the existence of some plausible alternative defense strategy not taken up by counsel" (citations and internal quotation marks omitted)). While the petition does state that this claim "will be further explained in petitioner's memorandum of law," *see* Pet. at 4, no supplemental memorandum of law was ever filed. As such, it is impossible to discern the merits of this claim by solely relying upon the petition.

Nonetheless, even construing the petition in such a way as to avoid this result, i.e., dismissal on the basis of vagueness, and assuming the arguments advanced by petitioner in state court, he has still failed to alleged a viable claim for relief.

 "A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *Eisemann v. Herbert,* 401 F.3d 102, 107 (2d Cir.2005) (citation omitted). When not alleging a conflict of interest, a defendant claiming ineffective assistance of counsel must demonstrate that the lawyer's representation "fell below an objective standard of reasonableness" and that counsel's deficiency was "prejudicial" to the defense. *Strickland v. Washington,* 466 U.S. 668, 687–92, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984). Prejudice, however, is presumed if "an actual conflict of interest adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. The presumption of prejudice only applies if the defendant establishes: (1) an actual conflict of interest existed, namely "the attorney's and defendant's interests diverged with respect to a material factual or legal issue or to a course of action;" (2) a lapse in representation demonstrated by the existence of "some plausible alternative defense strategy not taken up by counsel;" and (3) "that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Moree*, 220 F.3d 65, 69 (2d Cir.2000) (citations omitted).

 With respect to allegations of financial conflicts of interest, it is "presume[d] that counsel will continue to execute his professional and ethical duty to zealously represent his client" notwithstanding any financial conflict. *United States v. O'Neil*, 118 F.3d 65, 71 (2d Cir. 1997). Although failure to pay attorney's fees may result in some decisiveness between attorney and client, "failure to pay fees or an attorney's motion to withdraw for his client's failure to pay, without more, does not establish a conflict of interest." *Lopez v. Greiner*, 323 F.Supp.2d 456, 469 (S.D.N.Y.2004) (citations omitted).

In presenting this claim to the trial court, petitioner attached a January 19, 2006, letter from his attorney to the court asking to withdraw from petitioner's case because he was concerned that the ACP would not provide timely payment. *See* Mot. to Vacate at 103. According to petitioner, this financial conflict resulted in deficient performance from counsel, including his failure to call witnesses, obtain ballistic reports, and effectively cross-examine the prosecution's witnesses. *Id.* at 21–43.

First, although the referenced letter clearly highlights defense counsel's concerns regarding payment, as already noted, an attorney's motion to withdraw for failure to pay does not establish an actionable conflict of interest. *See Lopez*, 323 F.Supp.2d at 469; *see also Caderno v. United States*, 256 F.3d 1213, 1218 (11th Cir.2001) (to establish an actual financial conflict of interest, the defendant must show "that his counsel actively represented his own financial interest during [defendant's] trial"). Beyond this letter, petitioner has presented no evidence that trial counsel's interests diverged from his with respect to a material issue or legal course of action. Instead, petitioner summarily concludes that his attorney's failure to adopt his suggested trial strategies must have resulted from the concerns raised in the letter. *See* Mot. to Vacate at 21–43. As the trial court correctly concluded, however, nothing supports this conclusion. *See* Dkt. No. 13, Ex. D, Decision and Order at 4. Rather, the record suggests that the constraints on counsel's ability to defend petitioner was the result of overwhelming evidence against him and not because of financial obstacles.

Nonetheless, even presuming an actual conflict of interest existed, petitioner has not identified a course of action that his attorney failed to pursue because of this divergent, superior interest. *See Wolfson v. United States*, 907 F.Supp.2d 418, 424 (S.D.N.Y.2012) ("The petitioner must demonstrate that his counsel's interests diverged from [his] on some material legal or factual issue and resulted in an actual lapse in representation. Such a lapse of representation occurs when counsel, acting under a divided loyalty, forgoes some plausible alternative strategy of defense." (citations and internal quotation marks omit-

ted)). Although petitioner alleges that counsel omitted several alternative defense strategies, there is nothing to suggest that counsel bypassed these theories because of his alleged conflict with the ACP. For instance, petitioner contends that counsel failed to call two police witnesses that the prosecution omitted. *See* Mot. to Vacate at 18–21, 30–33. However, as evident by petitioner's motion, their testimony would have been cumulative and only emphasized petitioner's guilt. *Id.* at 18–21, 30–36. Although they may have also highlighted some inconsistencies in the prosecution's case, any deviation would have been slight. More importantly, there is nothing to suggest that counsel's failure to call these witnesses was the result of the alleged conflict, as opposed to sound trial strategy. *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005) (holding that an attorney cannot be found ineffective for choosing against a potentially fruitful course of action if that action also entailed a "significant potential downside"); *Henry v. Poole,* 409 F.3d 48, 63 (2d Cir.2005) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." (citations omitted)).

Petitioner further argues that this alleged conflict caused counsel not to consult with a ballistics expert. *See* Mot. to Vacate at 18, 25. Petitioner, however, fails to illustrate how testimony from such an expert constitutes a plausible alternative defense. *Id.* Whether the officers fired at him was not an element of the crimes for which he was charged. And even if none of the officers fired, the witnesses still stated that they thought petitioner would have seriously injured an officer while attempting to leave the scene. *See* Dkt. No. 14, Trial Transcript ("Trial Tr.") at 242–92, 315–35, 337–39. Furthermore, a ballistics report was unlikely to provide any additional information on the location of the officers during the incident. As petitioner

himself notes, their positions were identifiable based upon the spent shell casings and other evidence at the scene, information defense counsel already had access to. *See* Mot. to Vacate at 8.

Finally, petitioner claims that counsel was generally ill prepared for trial. *See* Mot. to Vacate at 17–42. Not only does this fail to constitute an alternate plausible defense, such contentions are belied by the record. Instead, it appears that any restrictions on trial counsel's ability to represent petitioner stemmed not from financial constraints but from the overwhelming evidence of his guilt.

 Even if this claim were to be construed as a general attack on counsel's effectiveness, petitioner is still unable to prevail. As noted above, a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Under the first prong, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. 2052. The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005) (quoting *Rompilla v. Beard,* 545 U.S. 374, 408, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)). "Constitutionally effective counsel embraces a 'wide range of professionally competent as-

sistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner*, 417 F.3d at 319 (citation omitted). In assessing performance, a court must apply a "'heavy measure of deference to counsel's judgments.'" *Id.* at 319 (quoting *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052).

■■■■ As to the second prong, petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional" or erroneous advice, the result of the trial would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. In this context, "reasonable probability" means that the errors are of a magnitude such that they "undermine[ ] confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir.2001) (citation and internal quotation marks omitted). "'The question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry*, 409 F.3d at 63–64 (quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052).

■■■■ Examination of the record in this case provides that petitioner received "effective" assistance within the meaning of *Strickland* throughout the proceedings. Counsel filed pre-trial motions contesting petitioner's incriminating statements and made an effective opening statement highlighting discrepancies in the prosecution's case and the excessive force used by police. *See* Resp't Mem. at 3; Trial Tr. at 185–93. Counsel also extensively cross-examined the prosecution's witnesses to establish that petitioner was a significant distance away from any of the officers when he fled the scene. *See* Trial Tr. at 242–92, 315–25, 337–39, 358–92, 493–509.

Counsel further delivered a competent summation. *See* Trial Tr. at 514–50. While it is apparent that petitioner is now unsatisfied with the result, counsel's overall performance evidences that his representation was effective. *See Jeremiah v. Artuz*, 181 F.Supp.2d 194, 203–04 (E.D.N.Y.2002) (rejecting ineffectiveness claim in light of counsel's overall performance). Further, even if there was a deficiency in counsel's performance, there is no reasonable probability that the result of the proceedings would have differed absent counsel's alleged errors. *See Poole*, 409 F.3d at 63–64 (holding that in order to sustain a claim for ineffective assistance of counsel, a defendant must establish that "absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt"). At least four police officers witnessed petitioner's crime and he freely admitted to the burglary, leaving counsel with little ammunition in defense.

In sum, nothing suggests that trial counsel's actions were contrary to petitioner's best interest or that the alleged lapses resulted from an actual conflict of interest with the ACP. Furthermore, the record reveals that petitioner received effective assistance from trial counsel at all stages of his case. As such, it cannot be concluded that the state courts' rejection of this claim was contrary to, or an unreasonable application of, Supreme Court law.

### E. Ground Three

■■■■ Under Ground Three, petitioner argues that the prosecution violated his right to due process by knowingly presenting false testimony to secure the conviction. *See* Pet. at 5. As discussed below, this claim fails to withstand review.

First, like the ineffective assistance claim discussed above, petitioner's factual contentions under Ground Three are insuf-

ficient to permit review. With respect to this claim, petitioner specifically alleges:

> In light of well established state and federal law, the prosecutor presented evidence that she knew was false to secure the confidence of the jury. She failed to advise the defense counsel of the false affidavits given by the police witnesses, and when the testimony was given in the courts, the prosecutor did nothing to correct it. This constitutional violation will be more fully explained in petitioner's memorandum of law.

Pet. at 5. These conclusory allegations are far from sufficient. While it is clear that petitioner is challenging the arresting officers' testimony, he fails to provide any further guidance on what specific statements were false. *See Skeete,* 2003 WL 22709079, at *2 ("[V]ague, conclusory and unsupported claims do not advance a viable claim for habeas corpus relief.").

Even looking past the petition and adopting the prosecutorial misconduct arguments advanced by petitioner in his state proceedings, this claim is still precluded from review. In his motion to vacate, petitioner argued that the prosecution elicited false testimony from the arresting officers regarding their locations at the time they opened fire on petitioner. *See* Mot. to Vacate at 8–13. Specifically, petitioner disputes their testimony that they fired to protect a fellow officer, and that they stopped firing when the officer was out of danger. *Id.* According to petitioner, the photographs provided by the prosecution affirm that these statements were incorrect. *See* Mot. to Vacate at 8. Petitioner also argued that the prosecution failed to disclose exculpatory pieces of evidence. *See* Mot. to Vacate at 7–13.

Citing to New York Criminal Procure Law section 440.10(2)(b), the trial court denied petitioner's prosecutorial miscon-duct arguments. *See* Dkt. No. 13, Ex. D, Decision and Order. The trial court specifically held that "sufficient facts appear on the record with respect to the issues raised ... to permit adequate review on appeal." *Id.* at 2. As discussed below, the trial court's reliance on section 440.10(2)(b), coupled with petitioner's failure to later raise these arguments on direct appeal, prohibits federal habeas review.

■ A federal court will not ordinarily review a federal claim presented in a habeas petition if it has been rejected by the state courts on an "independent and adequate" state law ground. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Murden v. Artuz,* 497 F.3d 178, 194 (2d Cir.2007); *see also Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

As noted above, the trial court denied petitioner's prosecutorial misconduct arguments pursuant to New York Criminal Procure Law section 440.10(2)(b). Further, despite the trial court's explicit direction that such claims must be brought on direct appeal, petitioner failed to raise his arguments in any fashion to the Appellate Division. *See supra* Section II(B). It is well-settled in this Circuit that section 440.10(2)(b) can provide an adequate and independent state law ground on which to deny habeas relief. *See, e.g., Holland v. Irvin,* 45 Fed.Appx. 17, 20 (2d Cir.2002); *McCormick v. Morrisey,* 770 F.Supp.2d 556, 563 (W.D.N.Y.2011); *Brown v. New York,* 374 F.Supp.2d 314, 318–19 (W.D.N.Y.2005); *Hemphill v. Senkowski,* No. 1:02–CV–7093, 2004 WL 943567, at *8 (S.D.N.Y. May 3, 2004). As such, this

claim is procedurally defaulted. *See Hemphill,* 2004 WL 943567, at *8 (holding that a claim denied under section 440.10(2)(b), which is not later brought on direct appeal, is procedurally defaulted and not subject to habeas review).

As already discussed, a procedural default will "bar habeas review of the federal claim, unless the . . . petitioner can show cause for the default and prejudice attributable thereto," or demonstrate that "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 749–50, 111 S.Ct. 2546. The petition in this case is silent regarding any cause for petitioner's failure to raise this claim on direct appeal and avoid the procedural bar imposed by section 440.10(2)(b). *See* Pet. at 4–5. Furthermore, petitioner has failed to allege any prejudice. *Id.* Also, as already noted, plainly absent in this case is any viable claim that petitioner is actually innocent. *See supra* Section III(C).

Because petitioner has failed to allege any viable grounds to excuse the procedural default, petitioner's prosecutorial misconduct claim is subject to an unexcused procedural default and will be dismissed.

### F. Ground Four

Under Ground Four, petitioner alleges that the trial court "failed to properly review the 440.10 CPL motion," and the "Appellate Division made an erroneous ruling against well established law" in denying his direct appeal. Pet. at 5. Like many of petitioner's other claims, the factual predicate for this claim consists of general, unsupported attacks on the state court proceedings. *Id.* As already discussed above, such allegations are insufficient. *See supra* Section III(D).

Nonetheless, liberally construing the petition to raise the strongest arguments possible, Ground Four will be interpreted to allege the remaining federal claims that petitioner unsuccessfully raised in state court. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (noting that pro se pleadings should be "read liberally and . . . interpreted to raise the strongest arguments [they] suggest." (citations omitted)). As set forth below, however, none of these remaining claims entitle petitioner to habeas relief.

### 1. Petitioner's Remaining Claims Asserted on Direct Appeal are Procedurally Barred and Meritless

■ On direct appeal, petitioner argued that his attempted aggravated assault conviction was not supported by legally sufficient evidence, or, in the alternative, it was against the weight of the evidence. *See* Appellant Br. at 5. Specifically, petitioner claimed that the prosecution failed to prove that he intended to cause serious injury to the arresting officer and that he came close to completion of the crime. *Id.* at 7–15. Petitioner also argued on direct appeal that his sentence was unduly harsh and excessive. *Id.* at 20. Construing Ground Four liberally, petitioner has renewed these arguments in the instant petition.

■ To the extent petitioner argues that his conviction was against the weight of the evidence, his claim denied. It is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding. *See Wright v. Conway,* No. 9:06–CV–0319 (GTS/GHL), 2009 WL 2982978, at *9 (N.D.N.Y. Sept. 14, 2009) ("Because federal habeas corpus review is not available to remedy mere errors of state law . . . no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial." (citation omitted)); *see also Mobley v. Kirkpatrick,* 778

F.Supp.2d 291, 311–12 (W.D.N.Y.2011) ("A 'weight of the evidence' argument is a pure state law claim grounded in [N.Y.Crim. Proc. Law section 470.15] ... [thus,] it is not cognizable on habeas review." (citation omitted)).

Petitioner's contention that his conviction for attempted aggravated assault is unsupported by legally sufficient evidence is similarly barred from review. As already discussed, a federal court will not review a federal claim presented in a habeas petition if it has been rejected by the state courts on an "independent and adequate" state law ground. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546; *Velasquez*, 898 F.2d at 9.

■ Here, the Appellate Division dismissed petitioner's sufficiency of the evidence claim as "unpreserved" because counsel failed to raise the specific arguments asserted on appeal in his motion to dismiss before the trial court. *Kimbrough*, 67 A.D.3d at 1340, 887 N.Y.S.2d 908 (citing *People v. Gray*, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (1995)). It is well established that this preservation rule is a firmly established and regularly followed state practice that bars subsequent habeas review. *See, e.g., Cotton v. Superintendent, Wende Corr. Facility*, No. 1:08–CV–0453, 2010 WL 3516577, at *8 (W.D.N.Y. Sept. 3, 2010); *Mills v. Poole*, No. 1:06–CV–0842, 2008 WL 2699394, at *11 (W.D.N.Y. June 30, 2008). Thus, this claim is procedurally defaulted.

A procedural default will "bar habeas review of the federal claim, unless the ... petitioner can show cause for the default and prejudice attributable thereto," or demonstrate that "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749–50, 111 S.Ct. 2546. Petitioner has not attempted to establish either cause for his procedural default or that he would be prejudiced should his claim not be reviewed. *See* Pet. at 4–5. Notably, petitioner does not assert that trial counsel was ineffective for failing to preserve this claim. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (noting that ineffective assistance of counsel can constitute cause to excuse a procedural default provided it is properly asserted); *McLeod v. Graham*, No. 1:10–CV–3778, 2010 WL 5125317, at *4 (E.D.N.Y. Dec. 9, 2010) ("Where, as here, a petitioner cannot prevail on the merits of his claim[ ], he cannot overcome a procedural bar by claiming ineffective assistance of counsel."). Further, as already noted, petitioner has made no showing that he is actually innocent of the underlying criminal charges at issue in this case. *See supra* Section III(C).

Accordingly, this claim is subject to an unexcused procedural default and will be dismissed on such grounds.

■ Nonetheless, even if the merits were to be considered, this claim would fail. A petitioner "bears a very heavy burden" when challenging the evidentiary sufficiency of his state criminal conviction. *Einaugler v. Supreme Court of N.Y.*, 109 F.3d 836, 840 (2d Cir.1997) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). A criminal conviction will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based

on the evidence adduced at trial."). Even when "faced with a record of historical facts that supports conflicting inferences [a habeas court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir.1994) (citing *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781). A reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir.1989), nor make its own "assessments of the weight of the evidence," *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996). Finally, "on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Coleman v. Johnson*, — U.S. ——, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (citation and internal quotation marks omitted).

■ The evidence presented in this case was legally sufficient for a rational jury to find petitioner guilty of attempted aggravated assault. *See* N.Y. Penal Law §§ 110, 120.11. Four different police officers testified that after chasing petitioner and trying to prevent him from fleeing the scene of a burglary, petitioner drove his getaway vehicle directly at a police officer. *See* Trial Tr. at 228–33, 305, 347–49, 482–84. This officer had positioned himself to prevent petitioner's escape, and he only avoided injury by moving out of the way moments before. *Id.* at 482–84. Despite petitioner's contention otherwise, this testimony was sufficient to establish that he intended to cause serious injury to the officer and that he came close to doing

such. *See People v. Miles*, 158 A.D.2d 476, 477, 551 N.Y.S.2d 62 (N.Y.App.Div. 2d Dep't 1990) (noting that intent can be inferred from a defendant's actions and the surrounding circumstances); *People v. Naradzay*, 11 N.Y.3d 460, 466, 872 N.Y.S.2d 373, 900 N.E.2d 924 (2008) ("In order to constitute an attempt, the defendant's conduct must have passed the stage of mere intent or mere preparation to commit a crime. In other words, the defendant must have engaged in conduct that came dangerously near commission of the completed crime. The dangerously near standard does not, however, mandate that the defendant take the final step necessary to complete the offense.") (citations and internal quotation marks omitted).

Although petitioner challenged the veracity of this testimony through cross-examination, issues of credibility and consistency were for the jury to resolve and they did so in the prosecution's favor. *See Wheel*, 34 F.3d at 66 (a habeas court must presume that the trier of facts resolved any conflicts in favor of the prosecution, and defer to that resolution). A court reviewing a habeas petition may not revisit the fact-finder's credibility determinations. *See Marshall v. Lonberger*, 459 U.S. 422, 432–35, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Vera v. Hanslmaier*, 928 F.Supp. 278, 284 (S.D.N.Y.1996). Here, as in many cases, "the jury's decision was largely a matter of choosing whether to believe [petitioner's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence.... We cannot say that no reasonable jury could have found guilt beyond a reasonable doubt on all the evidence." *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir.1981).

■ Finally, petitioner's argument that his sentence was unduly harsh and severe

is unexhausted for federal habeas purposes because it was never presented to the state court in constitutional terms. *See* Pet. at 5. As respondent correctly notes, petitioner raised this claim solely in terms of state law, which is insufficient. Resp't Mem. at 19–20.

■ As discussed above, a federal court may not grant habeas relief unless the petitioner has first exhausted his federal claims in state court, which generally requires that a petitioner "fairly present" his federal claim in each appropriate state court. *See* 28 U.S.C. § 2254(b)(1); *Baldwin*, 541 U.S. at 29, 124 S.Ct. 1347. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey*, 112 F.3d at 52 (citation omitted). It is not sufficient that a petitioner merely alleges the facts necessary for the federal claim or a similar state law claim. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). In other words, "the claim presented to the state court ... must be the 'substantial equivalent' of the claim raised in the federal habeas petition." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir.2003) (citations omitted).

It is clear from the record that petitioner's arguments contesting his sentence in state court were grounded in state law and did not raise a federal claim. *See* Appellant Br. at 20–22. Petitioner described the factual circumstances of his case and asked the Appellate Division to change the sentence in the interest of justice. *Id.* at 21. The brief made no argument that the aggregate sentence violated any constitutional right, or that the trial court erred. *Id.* at 20–22. It also failed to cite to any provision of the United States Constitution, federal law, or federal or state cases directly employing constitutional analysis.

*Id.* The brief only asked the Appellate Division to use its discretion and modify the sentence. *Id.* at 22. It is now well-settled that a prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not "fairly present" his or her constitutional claim in state court. *See, e.g., King v. Cunningham*, 442 F.Supp.2d 171, 181 (S.D.N.Y.2006) (collecting cases). Thus, it is clear that petitioner did not exhaust his sentencing claim. *See Fernandez v. LaValley*, No. 1:10–CV–7914, 2011 WL 4495302, at *3 (S.D.N.Y. Sept. 28, 2011) (finding petitioner's claim unexhausted because while the he raised the argument that the sentence was harsh and excessive on direct appeal, he did not raise it as a constitutional challenge).

■ In any event, there is no merit to the petitioner's claim. *See* 28 U.S.C. § 2254(b)(2); *Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir.2002) (noting that a district court may, at its discretion, deny a petition on the merits even if it contains an unexhausted claim). Here, petitioner admits that he was sentenced within the statutory limits. *See* Appellant Br. at 20–22; *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992) ("No federal constitutional issue is presented where ... the sentence is within the range prescribed by state law."). Further, petitioner does not specifically argue that his sentence constituted cruel and unusual punishment under the Eighth and Fourteenth Amendments of the Constitution. *See* Pet. at 5; Appellant Br. at 20–22. And even if he had made such an argument, it would be unavailing. A sentence within the statutory range is generally not a cruel and unusual punishment, and there is nothing about petitioner's sentence compared to the serious crimes he committed that would rise to the level of cruel and unusual punishment. *See Baide–Ferrero v. Ercole*, No. 1:06–

CV–6961, 2010 WL 1257615, at *4 (S.D.N.Y. Mar. 31, 2010) (collecting cases). As a result, there is no basis for habeas relief on this claim.

### 2. Petitioner's Remaining Claims Raised in His Motion to Vacate are Procedurally Barred

Petitioner's remaining claims contained in his motion to vacate, which are ostensibly asserted under Ground Four by his contention that the trial court "failed to properly review the 440.10 CPL motion," *see* Pet. at 5, are also unexhausted and procedurally barred because they were never presented to the Appellate Division for discretionary review.

As already noted, an application for a writ of habeas corpus may not be granted until a petitioner has exhausted all available state court remedies for his federal claims. *See* 28 U.S.C. § 2254(b)(1). A claim is not properly exhausted if it was never raised to the highest state court that could grant review. *See Ellman*, 42 F.3d at 147; *Grey*, 933 F.2d at 120.

In this case, after the trial court rejected his motion to vacate, petitioner only sought leave to appeal two of the claims raised in his motion. *See* Dkt. No. 13, Ex. E, Motion for Leave to Appeal at 10–27. These two claims have already been discussed above. *See supra* Section III(D)-(E). As such, the residue of his claims remain unexhausted. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 190 n. 3 (2d Cir.1982) ("Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had." (citation omitted)); *Deberry*, 2011 WL 1239999, at *6 (noting that a claim asserted in a motion to vacate is only fully exhausted once it has been presented to the Appellate Division).

Because petitioner no longer has remedies available to pursue these record based claims, *see Garner v. Superintendent*, No. 9:10–CV–1406 (GTS), 2012 WL 3929944, at *6 (N.D.N.Y. Sept. 10, 2012), they are also procedurally defaulted. *See Bossett v. Walker*, 41 F.3d 825, 828–29 (2d Cir.1994) (noting that if a petitioner has failed to exhaust his state court remedies, and no longer has remedies available to pursue his claims, they are deemed exhausted and are also procedurally defaulted); *Sumpter v. Sears*, No. 1:09–CV–0689, 2012 WL 95214, at *2 (E.D.N.Y. Jan. 12, 2012) ("[A] person who wishes to appeal [a motion to vacate must] make an application for a certificate granting leave to appeal to the intermediate appellate court within thirty days[.]").

Furthermore, as already elaborated upon, patently absent in this case are cause, prejudice, or a showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *See supra* Sections III(C)-(E). As such, there are no grounds to excuse petitioner's procedural default. Accordingly, petitioner's remaining federal claims contained in his motion to vacate, to the extent they are even asserted here, are subject to an unexcused procedural default.

## IV. CONCLUSION

Therefore, it is

ORDERED that

1. The petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED** in its entirety and **DISMISSED** for the reasons set forth above;

2. The Clerk is directed to serve a copy of this Decision and Order on the parties in accordance with the Local Rules; and

3. No certificate of appealability shall be issued in this case because petitioner has failed to make a "substantial showing

of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).[9]

IT IS SO ORDERED.

---

**9.** *See Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("[Section] 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right' " (citation omitted)).