**Burnell HENDRICKS, Plaintiff–Appellant,**

v.

**Thomas A. COUGHLIN, III; Bert Ross; David Post; M. Parrott; Dana Smith; Gloria Conrad; Stephen L. Norris; Paul Titus; Capt. Budd, Defendants–Appellees.**

No. 1093, Docket 95–2842.

United States Court of Appeals, Second Circuit.

Argued March 21, 1997.

Decided June 9, 1997.

Beth A. Rodgers, New York City, for Appellant.

Victor Paladino, Assistant Attorney General (Peter H. Schiff, Deputy Solicitor General of the State of New York, Nancy A. Spiegel, Assistant Attorney General, of counsel), for Appellees.

Before: FEINBERG, Senior Circuit Judge, PARKER, Circuit Judge, and SHADUR *, District Judge.

SHADUR, Senior District Judge:

Burnell Hendricks ("Hendricks") appeals from the dismissal by the United States District Court for the Western District of New York of Hendricks' 42 U.S.C. § 1983 ("Section 1983") claims of retaliatory prison transfers. Hendricks, an indigent prison inmate

---

* Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

who filed his action pro se, argues that the district court erred in refusing to appoint counsel under 28 U.S.C. § 1915(e),[1] most recently on September 7, 1995 (something under three months before the entry of the summary judgment and dismissal order). Because we find that the district court did not properly exercise its discretion when it denied Hendricks the appointment of counsel, we reverse and remand for proceedings consistent with this opinion.

## Background

Hendricks is a self-described jailhouse lawyer who has filed multiple grievances both within the prison system and in the courts and has honed his skills by working in law libraries at the institutions in which he has been incarcerated. This current action claims that in retaliation for that activity he was transferred from Southport Correctional Facility ("Southport") to Elmira Correctional Facility ("Elmira") in May 1989 and then to Clinton Correctional Facility ("Clinton") in September 1989. Named as defendants are nine individuals employed by the Department of Correctional Services ("DOCS"). Defendants (collectively "DOCS Officers") respond that Hendricks was transferred for legitimate reasons each time—in May to benefit from programs available at Elmira and in September because prison officials believed that Hendricks was organizing a prisoner demonstration. Hendricks disputes the authenticity of those reasons and therefore filed this Section 1983 action alleging violation of his constitutional rights.

At four different points in the proceedings below Hendricks sought the appointment of counsel under Section 1915(e)—and each time his request was denied. Hendricks thus continued to represent himself through several discovery disputes before entry of the summary judgment and dismissal order now at issue. After DOCS Officers had moved for summary judgment, the district court denied Hendricks' fourth and last motion for appointment of counsel, stating:

> It is this Court's policy to appoint counsel in civil rights cases filed by inmates, but only after plaintiff's allegations have withstood a motion to dismiss or for summary judgment. This policy comports with the law of the Circuit which provides that the Court should exercise its discretion to appoint counsel only in cases where plaintiff has made "a threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir.1989).

That unyielding policy, though plainly not directed by the quoted statement from *Cooper*, conformed to the Western District's then-existing "Plan for the Disposition of *Pro Se* Cases," [2] which dictated:

> All requests for appointment of counsel shall be denied by form order until such time as the complaint or petition has at least survived a dispositive motion.

Hendricks, continuing to act on his own, lost the motion for the dismissal of two defendants and for summary judgment as to the others, and hence suffered the dismissal of his entire lawsuit. On this appeal from

---

**1.** Under the current version of Title 28 as amended in 1996, former Section 1915(d) has been renumbered as Section 1915(e), but it was not altered in any substantive respect for purposes of this case. This opinion will refer to the present statutory embodiment in Section 1915(e), although the older version was in effect when the district court acted.

**2.** On October 1, 1996—after Hendricks had taken this appeal and we had directed his newly-appointed counsel to brief the constitutionality of the Western District's policy as well as its consistency or inconsistency with our announced standards governing appointments—that bright-line rule was changed to read:

> All requests for counsel shall be reviewed in light of the facts presented, the factors required by case law, and for a threshold show-

ing of merit, and shall be granted or denied as deemed appropriate in the exercise of the court's discretion. Survival of a dispositive motion may be viewed as an indication that the complaint or petition has met the threshold requirements, but this fact is not the sole basis for determining whether counsel should be appointed.

In light of that change, we will not address the constitutionality of the now-superseded rule (see *Dean v. Superintendent, Clinton Correctional Facility*, 93 F.3d 58, 61 (2d Cir.1996), quoting *Harmon v. Brucker*, 355 U.S. 579, 581, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958)(per curiam)). Instead we limit ourselves to the failure of the now-superseded rule to conform to our earlier teaching.

that dismissal we, unlike the district court, have granted Hendricks' motion for appointment of counsel to represent him here.

### Denial of Trial Counsel

Section 1915(e) states that "[t]he court may request an attorney to represent any person unable to afford counsel." *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986) has offered this guidance for exercising that discretion:

> In deciding whether to appoint counsel, however, the district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Although the district court recognized *Hodge* in its order denying appointment of counsel, it immediately thereafter departed from the *Hodge* analysis by announcing its adherence to the bright-line policy of appointing counsel "only after plaintiff's allegations have withstood a motion to dismiss or for summary judgment." Any such rule plainly poses Catch 22 problems for many cases that would otherwise meet the standards set out in *Hodge*: It is often likely that the assistance of a lawyer will be vital to surviving a potentially dispositive adverse motion (certainly in the summary judgment context, and sometimes in responding to a motion to dismiss as well), yet the rule operates to deny at the threshold the selfsame assistance that is needed for such survival. Indeed, our per curiam opinion in *Cooper*, which reconfirmed our *Hodge* decision while cautioning against an equally Pavlovian appointment of counsel whenever an indigent litigant seeks to ring the appointment bell, made that very point (877 F.2d at 174):

> These considerations, especially a threshold showing of some likelihood of merit, should be borne in mind by trial and appellate courts in deciding whether to appoint counsel. For appellate courts, that threshold showing can be assessed with some rigor at least in cases such as the pending one where a trial record has been fully developed with the aid of counsel. In trial courts, the preliminary assessment of likely merit must be undertaken somewhat more generously since the unrepresented litigant might have difficulty articulating the circumstances that will indicate the merit that might be developed by competent counsel. In raising a caution against routine appointment of counsel, we do not mean to oblige indigent litigants to demonstrate that they can win their cases without the aid of counsel.

We need not look far to find an example of an arguably meritorious case that may fail to survive a dispositive motion because of an inadequate presentation of the facts—Hendricks' submissions on summary judgment offer just such an illustration.

Here the record shows that Hendricks filed only two things in response to DOCS Officers' summary judgment motion:

> 1. "Plaintiffs' Statement Pursuant to Local Rules 56," which listed "material facts not in dispute," almost all of which appeared to be framed from *defendants'* perspective; and

> 2. "Plaintiffs' Application in Support of Local Rules 56," which comprised just three pages describing problems that Hendricks had been experiencing *after* he filed this suit and that were thus outside the substantive scope of the case.

Though the record is not entirely clear, it seems that Hendricks did not generate any exhibits such as affidavits or depositions. It does appear from the district court's opinion granting summary judgment that it looked outside of the materials presented on the motion and considered several documents produced by defendants in response to Hendricks' discovery requests. But as also noted in the opinion, Hendricks disputed the accuracy of those documents.

Perhaps most significantly, the record amply reflects the difficulties that Hendricks—

operating where and how he did—encountered in the attempted development of his case. Even though he did seek to launch paper discovery, DOCS Officers produced none of the requested documents on the asserted ground that they did not individually have them in their possession, control or custody—and DOCS itself would not permit Hendricks to review his transfer records in *its* possession. That stonewalling led to the district court's intervention, by treating the document request as an application for a subpoena and ordering the Attorney General to facilitate production of the requested documents within ten days. Nonetheless eight months passed without defendants' compliance, so that the district court had to threaten sanctions to cause the delivery of the documents over a year after Hendricks had initially requested them. And even then Hendricks was demonstrably unable to pursue the procedures that were needed to move forward from the production of documents to the development of potentially relevant evidence.

We have emphasized in the per curiam opinion in *Cooper*, 877 F.2d at 172–73 that district judges should not mistakenly read our discussion in *Hodge* as an invitation to appoint counsel "indiscriminately" (*id.* 877 F.2d at 172) just because an indigent litigant makes such a request. But the inherent drawback of the bright-line rule that was instead applied by the district court here lies in its failure to recognize that in some situations a pro se litigant may face substantial problems in the very development of the factual record that is needed for resolution of a case that poses complex issues. And in such situations the court itself may unfortunately be thrust into the uncomfortable role of a quasi-advocate before it can decide a dispositive motion, being required to exercise its powers (as best it can from the outside of a lawsuit looking in) to pursue matters for which it has neither the resources nor the responsibility under our adversarial system. In that type of circumstance the appointment of counsel serves the interests of the court as well as the pro se litigant—and often it actu-

ally also serves the best interests of the opposing parties, whose lawyers are then called on to deal with a fellow lawyer accustomed to the procedures, language and concepts of the law rather than with a sometimes inarticulate lay litigant who is unable to pursue the litigation in an orderly way. At the end of the day, of course, we continue to adhere to what we said in *Cooper*'s careful spelling out of both the relevant considerations and their appropriate balancing in deciding whether or not counsel should be appointed.

█ We therefore conclude that the district court's automatic denial of Hendricks' request for appointment of counsel because the case had not survived a dispositive motion constituted an abuse of discretion under Section 1915(e). And having reached that conclusion, we see no need to return the case to the lower court for another round of briefing on that score: *From the record before us* (including what it discloses about the record gaps that could best be filled by an experienced counsel acting on Hendricks' behalf), *we are in as good a position as the district court to apply the Hodge factors to determine whether counsel should be appointed* (*Merritt v. Faulkner*, 697 F.2d 761, 766 (7th Cir.1983)).

█ First, Hendricks plainly meets the threshold requirement that at least some aspects of his Section 1983 claim are "likely to be of substance" (*Hodge*, 802 F.2d at 61). Four of the defendants—Dana Smith, Paul Titus, Michael Parrott and Stephen Norris—admit that they were involved in the decision to transfer Hendricks from Elmira to Clinton. Those four DOCS Officers assert that they had a legitimate reason for the transfer because they suspected that Hendricks was organizing a prison demonstration, but on the record Hendricks may be able to demonstrate more than one factual issue on that score. For one thing, he says that no such demonstration was being organized (apparently it never came to pass), and for another he disclaims any responsibility for any such purported plan.[3] And it must be kept in

---

**3.** We recognize of course that the ultimate question under Section 1983 is the good faith rather than the accuracy of defendants' asserted beliefs regarding Hendricks, but a showing by Hen-

mind that Hendricks claims that the actual motivation for his transfer was his documented pursuit of grievances against DOCS, activity clearly protected by the Constitution. As we held in *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995):

Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.

■ As for the remaining five defendants, the record to this point reflects their varying degrees of personal involvement (or perhaps noninvolvement) in one or the other of the two decisions to transfer Hendricks. Thus as to defendants David Post and Captain Ross, the district court found the Complaint was defective for its failure to allege their requisite direct participation in the challenged decisions, so that they were dismissed as defendants as a pleading matter. And on the contemporaneous summary judgment motion, defendant Bert Ross, who was the Elmira Superintendent at the relevant period, offered evidence that he had no involvement at all in either transfer decision beyond assigning a subordinate to investigate and respond to a post-transfer complaint by Hendricks. At least on the current record that would call for Hendricks to lose his claims against all three of those defendants, given Section 1983's requirement of personal involvement in (rather than mere respondeat superior responsibility for) any alleged constitutional deprivation (*Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)). Finally, although remaining defendants Gloria Conrad and Thomas Coughlin III do not disclaim personal participation in the Southport–to–Elmira transfer decision, their evidence asserts a non-retaliatory reason for their action.

But the difficulty in upholding any judgment as a matter of law as to one or more defendants at this point stems from the very fact that Hendricks did not have a fair opportunity to litigate his case due to his lack of counsel—we cannot know what the record could have been absent that deprivation. And that extends both to the possible curing of any flaws in the Complaint as well as to any shortfalls in evidentiary terms.

We therefore decline to resolve Hendricks' claims against any of the remaining five defendants either. Instead we will remand those claims as well, with the expectation that if appointed counsel does not uncover further facts that are sufficient to create reasonable inferences implicating the personal involvement of one or more of the remaining five defendants, counsel will act to have that defendant or those defendants dismissed.

Having thus given an affirmative answer to the *Hodge* requirement of a "threshold showing of merit," we can quickly address the other *Hodge* factors—all of which really amount to evaluating Hendricks' ability to manage his case effectively on his own. Throughout the case Hendricks has been incarcerated in the DOCS system, severely limiting his ability to investigate and present the crucial facts in what appears to be a fact-intensive case. As already indicated, not the least of those restrictions was his inability to take depositions of the DOCS Officers involved in the transfer decisions. In like manner, Hendricks' ability to develop the facts as to the nature and extent of the other defendants' involvement or noninvolvement was seriously limited. In a case such as this, where the crux of the dispute centers on the reason for the transfers, a deposition is incomparably preferable to written interrogatories as a vehicle for seeking out useful evidence, not only because of the greater ease in shaping later questions based on earlier answers but also because the interrogatory answers are typically prepared by lawyers rather than through the uncounseled responses of the witnesses. Moreover, Hendricks' written submissions to the summary judgment motion show that despite his experience of working in the law library and bringing prior lawsuits, Hendricks was really not equipped to present his case adequately in this instance. Thus he did not respond directly to DOCS Officers' motion, nor did he

dricks of a lack of accuracy—when presented as part of a total factual matrix—may create an

adverse inference as to the bona fides of the beliefs themselves.

offer any evidence to counter the submission by DOCS Officers. Finally, the complexity of legal issues was considerable—Hendricks had to navigate the shifting burdens of a Section 1983 retaliation claim (see, e.g., *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)) where issues of supervisory responsibility under that statute also played a role.

## Conclusion

We have found that the district court did not properly exercise its discretion in denying Hendricks' appointment of counsel, and our independent review of the record teaches that under the *Hodge* factors Hendricks should have been afforded such assistance. Accordingly we reverse the decision denying appointment of counsel, vacate the judgment dismissing the action and remand for proceedings consistent with this opinion.