**Robert DAVIS, Plaintiff–Appellant,**

**v.**

**Walter R. KELLY, Defendant–Appellee.**

**Docket No. 97–2575.**

United States Court of Appeals, Second Circuit.

Argued Sept. 4, 1998.

Decided Nov. 23, 1998.

---

Thomas I. Sheridan, III, New York, N.Y. (Linda M. Baldwin, Haythe & Curley, New York, N.Y., on the brief), for plaintiff-appellant.

Dennis C. Vacco, N.Y. State Atty. Gen., Peter H. Schiff, Deputy Solicitor Gen., Peter C. Crary, Victor Paladino, Asst. Attys. Gen., Albany, N.Y., submitted a brief for defendant-appellee.

Before: NEWMAN, McLAUGHLIN and PARKER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal by a prisoner challenging what he alleges is a retaliatory transfer primarily concerns the appropriate disposition of a complaint asserting what appears to be a meritless claim against a warden where other corrections officials with potential liability have not yet been identified. Robert Davis, an inmate at Green Haven Correctional Facility, appeals from the August 7, 1997 judgment of the United States District Court for the Western District of New York (Richard J. Arcara, Judge), granting the motion of defendant Walter R. Kelly, Superintendent and Warden of Attica Prison, for summary judgment, and dismissing the complaint. We conclude that, because this plaintiff was acting *pro se* and could not have been expected to have known which parties were personally involved in his transfer, he should have been granted an additional opportunity for discovery to ascertain the identities of such parties, and his suit was therefore prematurely dismissed. Accordingly, we reverse and remand.

## Background

Davis was incarcerated in 1981 to serve a sentence of twenty-five years to life. In 1982, he was transferred to the Attica Correctional Facility. Over the years, his relatively positive disciplinary record gradually won him increased privileges, such as a position as a commissary clerk and an assign-

ment to the Honor Block. In 1988, he began repeatedly to request a transfer to the Wende Correctional Facility, which he believed would be both more rehabilitative and less violent. The transfer request was approved by officials at both Attica and the New York State Department of Correctional Services, Division of Classification and Movement ("DOCS–DCM") by October 1991, but never carried out.

In February 1992, Davis filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, against Warden Kelly and others, alleging that Kelly improperly administered a prison election relating to television and package privileges and that Kelly improperly supervised certain corrections officers and counselors, who had allegedly abused or cheated Davis. The disposition of this suit does not appear in the record.

The sequence of subsequent events is not entirely clear. On July 2, 1992, an entry in Davis's records reads "TRANSFERRED THIS DATE TO WENDE CORRECTIONAL FACILITY," but the transfer never took place; the typed words were struck through some time later by unknown officials at an unknown time, and the word "CANCELLED" was typed next to them. In the "Inmate Transfer System" records of DOCS–DCM and Attica, it appears that the pending transfer order to Wende was cancelled on February 17, 1993. On February 25, 1993, an unidentified official at Attica requested DOCS–DCM to transfer Davis to "any suitable maximum security facility." In March 1993, Davis was transferred to the Clinton Correctional Facility, which Davis alleged was a "disciplinary problem prison," plagued by violence and unsuited to rehabilitation. He was demoted from commissary clerk to janitor, a job that paid substantially lower wages.

In December 1994, Davis brought the instant section 1983 action in the District Court, naming only Warden Kelly as a defendant. The complaint alleged that Davis's transfer to Clinton was retaliation for his earlier section 1983 suit. Davis sought damages and injunctive relief to restore him to the Attica Honor Block unit and to his commissary job assignment. In his answer, Kelly denied that the transfer was retaliatory and invoked qualified immunity.

In response to Judge Arcara's order inviting proposed scheduling orders, see Fed. R.Civ.P. 16, Davis moved for appointment of counsel. Judge Arcara denied the motion, relying on the "Court's policy to appoint counsel in civil rights cases filed by inmates, but only after the plaintiff's allegations have withstood a motion to dismiss or for summary judgment." That policy has since been changed, see Hendricks v. Coughlin, 114 F.3d 390, 391 n. 2 (2d Cir.1997), and we have ruled that a denial based on the prior policy is error, see id. at 393.

Davis then requested a number of documents from Kelly. He asked for reports concerning inmate assaults at both Clinton and Wende, presumably to compare the relative levels of violence at the two facilities. He also asked for print-outs of all prisoner transfers from Attica during July 1992, a list of all honor block inmates who had been transferred to Clinton between 1987 and 1993, and all evaluations and disciplinary reports concerning Davis that had been filed between 1981 and 1994. He did not, however, request any documents pertaining to the administration of the transfer process, or the officials who normally carry out such transfers.

Davis's requests for production of documents were met by the Defendant's objections except as to two documents: (1) a summary of Davis's transfer record, which gave as a reason for Davis's transfer, "Transfer recommended as it is felt inmate has become too familiar with facility as inmate has been here since 9/82," and (2) Davis's "service unit" records from Attica. Magistrate Judge Heckman, to whom discovery matters had been referred, denied Davis's motion to compel all other requested documents.

The Defendant moved for summary judgment on the basis of his own affidavit and that of Gerald E. Morrissey, a classification and movement analyst in DOCS–DCM. Kelly denied any personal knowledge of the transfer orders, but offered a chronology of events, presumably relying on prison records. He acknowledged the approval of Davis's transfer request in May 1991, noted that it had remained unfulfilled for two

years, and stated, "[C]onsequently ... Attica requested that [DOCS–DCM] cancel the outstanding T.O. [transfer order] and consider inmate Davis for transfer to any suitable maximum security facility." He then asserted that in February 1993 Attica requested DOCS–DCM to transfer Davis to "any suitable facility" because "Davis, who had been incarcerated at Attica in excess of ten years, had become too familiar with the facility and, consequently, posed a threat to the maintenance of order and discipline within the facility." Kelly further asserted that he did not participate in the initial transfer order, its cancellation, or the subsequent transfer order, and that the transfer orders were processed by unnamed other individuals "in the ordinary course of business" at Attica and reviewed by DOCS–DCM.

Morrissey, relying on "familiar[ity] with the policies and procedures used" stated that transfer requests do not require a superintendent's participation, and that such requests and their cancellation must be reviewed and approved by his office, DOCS–DCM. He explained the long pendency of Davis's original transfer order by asserting that the Wende facility is much smaller than Clinton and transfers to Wende are difficult to obtain. Davis's 1991 transfer order to Wende was cancelled in 1993, he averred, "for the valid and objective basis that the T.O. had been outstanding for nearly two years." He further asserted that "[t]ransferring inmates who have become familiar with facility staff and procedures is an accepted rationale" for prisoner transfer, and that the 1993 request for a new transfer request for Davis was submitted by Attica staff who had determined that "his long stay at Attica had made him too familiar with the facility and, thus, posed a threat to the maintenance of order and discipline within the facility."

In his Statement of Undisputed Facts, Kelly included a number of assertions that Davis contested. For example, the date of the transfer cancellation is claimed "undisputably" to be February 17, 1993; however, from the records thus far produced, this date is not clear, and Davis alleges that the date was July 1992, much closer to the date of his first lawsuit.

Magistrate Judge Heckman filed a report recommending the grant of Kelly's summary

judgment motion on the grounds that (1) Davis had failed to state a claim of retaliation because his allegations were conclusory and he had failed to show that he would not have been transferred even if he had not filed his 1992 lawsuit; (2) Kelly had shown that he was not personally involved in the transfer; and (3) Kelly was entitled to qualified immunity. The District Court adopted the Report and entered a judgment dismissing the complaint. Upon Davis's appeal, this Court appointed counsel.

## Discussion

 Some aspects of this appeal are not in dispute. A prisoner has no liberty interest in remaining at a particular correctional facility, *see Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Meriwether v. Coughlin,* 879 F.2d 1037, 1047 (2d Cir.1989), but prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights, *see Hendricks v. Coughlin,* 114 F.3d 390, 393–94 (2d Cir.1997); *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987), and Davis had a constitutionally protected right to petition the court for redress of grievances, *see Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). The primary disputed issue is whether the cancellation of Davis's requested transfer to Wende and the subsequent ordering of a transfer to Clinton were done in retaliation for Davis's 1992 lawsuit. The District Court, acting on the Magistrate Judge's report, resolved this issue in favor of Kelly, the only named defendant, primarily on the ground that Kelly had shown his lack of personal involvement in the cancellation and subsequent transfer.

The problem with the resolution of Kelly's involvement in the challenged transfer orders is that it has been made prematurely. The affidavits submitted in support of Kelly's motion for summary judgment contain his averment that he had no personal involvement, but provide no indication of the identity of the officials at Attica who initiated either the request to cancel the Wende transfer or to order the Clinton transfer. Morrissey, reporting from his vantage point at DOCS, attributes the initiation of the two actions to

"Attica staff." Though Morrissey identifies what may well be legitimate reasons that might have motivated both actions, he does not claim to have personal knowledge of whether these were the real reasons.

Of course, neither Kelly nor Morrissey were obligated at that point to provide the names of the officials who had carried out the transfer, since Davis had not asked for such names. In fact, none of Davis's discovery requests, had they been granted, was likely to uncover the identities of the parties involved. Davis seems to have assumed that Kelly either executed the transfer order himself or had personal knowledge of it. Nonetheless, Davis could not reasonably have been expected to understand prison transfer procedures or to be able to identify the officials involved. Moreover, without the assistance of an attorney, his failure to make the necessary inquiries is understandable.

In similar circumstances, courts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability. *See Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 37 (2d Cir.1996) ("[B]ut for [the plaintiff's] mistake [in naming the correctional facility as a defendant], he would have ... at least named the superintendent of the facility and obtained the names of the responsible officers through discovery."); *Satchell v. Dilworth,* 745 F.2d 781, 786 (2d Cir.1984) ("Plaintiff should have a reasonable opportunity, through discovery [of senior personnel], to ascertain what individuals ... caused [the alleged violation]."); *Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir.1981) ("[I]f [prison hospital administrator] later disclaims knowledge and responsibility [for the alleged violation], he can readily identify those who were responsible."); *Maclin v. Paulson,* 627 F.2d 83, 87 (7th Cir.1980) ("[P]laintiff should have been permitted to

obtain ... identity [of unidentified officers] through limited discovery."); *Gordon v. Leeke,* 574 F.2d 1147, 1152 (4th Cir.1978) ("[The plaintiff] should have been granted the opportunity to disclose the identity of [those committing the alleged violation], if known to him, and to have joined them as defendants in substitution of the warden; or, if [the plaintiff] did not know their identity, the court should have afforded him the opportunity to discover them from the warden ...."); *see also Oliveri v. Thompson,* 803 F.2d 1265, 1279 (2d Cir.1986) (pointing out advantage, in suits against governmental entities and supervisors, of permitting early discovery to identify responsible subordinate officials); *Maggette v. Dalsheim,* 709 F.2d 800, 803 (2d Cir.1983) (endorsing *Maclin* ).

Similarly, courts have rejected the dismissal of suits against unnamed defendants described by roles, *see Murphy v. Kellar,* 950 F.2d 290, 293 (5th Cir.1992); *Smith–Bey v. Hospital Administrator,* 841 F.2d 751, 759 (7th Cir.1988), defendants identified only as "John Doe's," *see Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir.1985); *Gillespie v. Civiletti,* 629 F.2d 637, 643 (9th Cir.1980), or an institutional defendant, *see Donald v. Cook County Sheriff's Dep't,* 95 F.3d 548, 555 & n. 3 (7th Cir.1996); *Berndt v. Tennessee,* 796 F.2d 879, 882 (6th Cir.1986); *Wilger v. Department of Pensions & Security,* 593 F.2d 12, 13 (5th Cir.1979), until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials. Once the supervisory officer has inquired within the institution and identified the actual decision-makers of the challenged action, those officials may then submit affidavits based on their personal knowledge of the circumstances.[1]

After an opportunity for discovery, undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case, *see Hendricks,* 114 F.3d at 394; *Wright v.*

---

1. In some circumstances, challenged governmental action may occur so frequently that no official recalls a particular incident. Prison transfer orders might fall into this category, but the identity of a particular transferred prisoner might recall the matter to an official's mind. In the absence of any defendant's personal recollection of the

motivation for a routine action such as a prisoner's transfer, the circumstances of an institution's usual practice, taken for legitimate reasons, might well suffice to defeat a prisoner's claim of improper motivation, if based only on speculation.

*Smith,* 21 F.3d 496, 501–02.(2d Cir.1994), but such dismissal is premature where the opportunity to identify those involved has not yet been accorded. Indeed, in some instances, their identification might produce evidence from them that they acted at the supervisor's instruction, thus putting in issue the supervisor's denial of personal involvement.

■ In this case, Davis was afforded an *opportunity* for discovery, and he simply failed to realize until after the summary judgment motion was filed that he had failed to name the appropriate defendant(s). Nonetheless, his failure is understandable under the circumstances. Though a court need not act as an advocate for *pro se* litigants, in *pro se* cases there is " 'a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done.' " *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.1978) (quoting *Canty v. City of Richmond, Virginia, Police Dep't,* 383 F.Supp. 1396, 1399–1400, *aff'd,* 526 F.2d 587 (4th Cir.1975)). We therefore hold that when a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery.

Of course, after an opportunity for appropriate discovery has been afforded, Kelly may renew his motion for summary judgment. He will be entitled to prevail (a) if Davis cannot raise a genuine issue of material fact disputing Kelly's evidence of lack of personal involvement, (b) if Davis cannot present evidence permitting an inference that the cancellation and transfer orders were retaliatory, or (c) even if Kelly's involvement is fairly in dispute, he presents evidence of the affirmative defense that the cancellation and transfer orders would have been issued in the absence of a retaliatory motive, *see Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and Davis fails to raise a genuine issue of material fact concerning this defense. *See*

*Graham v. Henderson,* 89 F.3d 75, 79–80 (2d Cir.1996).

### Conclusion

Because the dismissal, without adequate opportunity to identify officials responsible for the challenged transfer orders, was premature, we vacate the judgment and remand for further proceedings. Since Davis now has the benefit of appointed counsel, who can be expected to initiate appropriate discovery and renew at least some of the *pro se* discovery requests that might have been inartfully presented, we need not consider the appellant's additional contentions concerning the denial in the District Court of appointment of counsel and discovery.