Fredrick DIAZ, Petitioner,

v.

Joseph BELLNIER, Respondent.

No. 08–CV–4009 (MKB).

United States District Court,
E.D. New York.

Sept. 27, 2013.

Frederick Diaz, Comstock, NY, pro se.

Marie–Claude Palmieri Wrenn, Brooklyn, NY, New York State Attorney Generals Office—Generic, New York State Attorney Generals Office, Kings County District Attorneys Office—Generic, for Respondent.

### MEMORANDUM & ORDER

MARGO K. BRODIE, District Judge.

Petitioner Frederick Diaz brought the above-captioned pro se petition pursuant to 28 U.S.C. § 2254, in which he alleged that he was being held in state custody in violation of his federal constitutional rights. On September 24, 2012, the Court denied Petitioner's habeas petition, finding it barred by the statute of limitations. Petitioner has filed a motion for reconsideration of the Court's Memorandum and Order ("September 24, 2012 Decision"). For the reasons set forth below, Petitioner's motion is denied.

### I. Background

The Court assumes familiarity with the September 24, 2012 Decision, which sets out the facts more fully. Petitioner's underlying habeas claims arise from a judgment of conviction after a jury trial in New York Supreme Court, Kings County, for four counts of murder (two counts of murder in the second degree and two counts of felony murder).[1] (Resp. Aff. Opp. Petition

---

1. Petitioner has asserted that his confession was coerced. Prior to Petitioner's trial, the trial court held a suppression hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72, 78, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965), to determine the voluntariness of Petitioner's state-

ment. (Resp. Aff. Opp. Petition for Writ of Habeas Corpus ("Resp. Opp. Petition"), Ex. A1 ("Huntley Tr.") 1–62.) Petitioner argued that his confession should be suppressed because it was given under duress based on the length of time he was in police custody and

for Writ of Habeas Corpus ("Resp. Opp. Petition") Ex. C, Sentencing Transcript 7, 10.) Petitioner was sentenced to 50 years to life imprisonment. (*Id.*) Petitioner appealed his conviction to the New York Appellate Division, Second Department, claiming that: (1) he was denied due process when the trial court failed to instruct the jury not to consider his co-defendant's confession as evidence of Petitioner's guilt; (2) the prosecutor's summation was prejudicial; (3) the trial court's instructions regarding the predicate felony charge were erroneous; and (4) the consecutive sentences were excessive and harsh. The Appellate Division rejected Petitioner's claims and affirmed his conviction. *People v. Diaz,* 153 A.D.2d 575, 544 N.Y.S.2d 500 (App.Div.1989). On October 26, 1989, the New York Court of Appeals denied leave to appeal. *People v. Diaz,* 74 N.Y.2d 895, 548 N.Y.S.2d 428, 547 N.E.2d 955 (1989).

On February 28, 2006, Petitioner filed a post-conviction motion in New York State court pursuant to N.Y. Criminal Procedure Law § 440 seeking an order directing DNA testing on evidence from the crime scene and vacating or modifying his sentence based on: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) newly discovered evidence. (Pet. Writ of Habeas Corpus ("Petition") 4; Resp. Opp. Petition Ex. J, Pet. 440 motion.) In its opposition papers, the People noted that many of Petitioner's claims were based on the trial record, and thus, they were procedurally barred. (Resp. Opp. Petition Ex. K ("People's Mem. Opp. 440 motion") 1–5.) In his reply papers, Petitioner claimed he was actually innocent. (Petition Ex. C, Pet. Reply 440 motion 15–16.) On August 27, 2007, the state

court denied Petitioner's 440 motion. (Resp. Opp. Petition Ex. L, Judge Reichbach's Decision and Order.) The court found that (1) the crime scene evidence was no longer available for testing; (2) the "vast majority of [Petitioner's] claims [were] based on the record" and therefore barred from review; (3) Petitioner failed to show ineffective assistance of counsel; and (4) the sentence imposed was "not illegal or otherwise invalid." (*Id.*) On December 24, 2007, the Appellate Division denied leave to appeal (Petition Ex. C, Appellate Division decisions.) On February 21, May 19, and September 9, 2008, the Appellate Division denied Petitioner's repeated motions for reargument. (*Id.*)

On September 23, 2008, Petitioner filed his habeas petition with this Court. In the petition, Petitioner asserted claims of (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct; (3) newly discovered evidence through DNA tests; and (4) actual innocence. The Court denied his petition, finding that Petitioner's claims were barred by the statute of limitations set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Diaz v. Bellnier,* No. 08–CV–4009, 2012 WL 4447357 (E.D.N.Y. Sept. 24, 2012). On October 4, 2012, Petitioner filed this motion for reconsideration. Petitioner seeks reconsideration of the Court's September 24, 2012 Decision denying his petition, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (Pet. Recons. Mem.); *see also* Fed.R.Civ.P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").[2]

---

the nature of the interrogations. (Huntley Tr. 66.) The trial court denied Petitioner's motion to suppress his confession. (*Id.* at 62.)

**2.** Petitioner's motion was timely submitted within 28 days of the September 24, 2012 entry of judgment.

## II. Discussion

### a. Standard of Review

■ The standard for granting a motion to reconsider a judgment "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995) (citations omitted); *see also Lesch v. United States,* 372 Fed.Appx. 182, 183 (2d Cir.2010) (same) (quoting *Shrader,* 70 F.3d at 257); *Smith v. Schweiloch* ("*Schweiloch*") (No. 12–CV–3253, 2012 WL 2277687, at *1 (S.D.N.Y. June 18, 2012) ("The moving party is required to demonstrate that 'the Court [ ] overlooked controlling decisions or factual matters that were put before it on the underlying motion, and which, had they been considered, might have reasonably altered the result before the court.'") (alteration in original) (quoting *Vincent v. Money Store,* No. 03–CV–2876, 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011)); Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (requiring the moving party to "set[ ] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked").

■ It is thus "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir.2012) (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir.1998)), *as amended* (July 13, 2012), *cert. denied,* 569 U.S. ——, 133 S.Ct. 1805, 185 L.Ed.2d 812 (2013). In other words, "[r]econsideration of a court's previous or-der is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hidalgo v. New York,* No. 11–CV–5074, 2012 WL 3598878, at *1 (E.D.N.Y. Aug. 20, 2012) (citation and internal quotation marks omitted). A motion for reconsideration "should not be used as a vehicle simply to voice disagreement with the Court's decision, . . . nor does it present an occasion for repeating old arguments previously rejected or an opportunity for making new arguments that could have previously been made." *Premium Sports Inc. v. Connell,* No. 10–CV–3753, 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (alteration, citation and internal quotation marks omitted); *see also Smith v. New York City Dep't of Educ.,* 524 Fed.Appx. 730, 734 (2d Cir. 2013) ("A motion for reconsideration is not the appropriate mechanism for a party to relitigate an issue already decided or to advance new facts, issues, or arguments not previously presented to the court."); *Stoner v. Young Concert Artists, Inc.,* No. 11–CV–7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources." (alteration in original) (citations and internal quotation marks omitted)).

### b. Motion for Reconsideration

The Court's September 24, 2012 Decision denied Petitioner's habeas petition because (1) Petitioner had failed to file his petition within the statute of limitations by more than 11 years, Petitioner had not asked the Court to equitably toll his petition based on a theory that he had been pursuing his rights diligently and that

some extraordinary circumstance stood in his way and prevented timely filing, and (3) Petitioner could not establish that he fell within the "actual innocence" equitable exception to the statute of limitations by establishing, pursuant to *Schlup v. Delo*, a threshold showing that he had "a credible and compelling claim of actual innocence." *Diaz*, 2012 WL 4447357, at *6–8 (citing *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) and *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir.2012)).

Petitioner now seeks reconsideration on the basis that the Court failed to discuss all the facts in the proffered police reports that Petitioner believes are salient to his claim of actual innocence. (Pet. Recons. Mem. 2–3.) In a supplemental submission Petitioner also cites two cases he characterizes as controlling decisions on the analysis of claims of "actual innocence" that this Court did not follow in its denial of his petition. (Letter from Pet. dated Nov. 5, 2012 ("Pet. Supp.") (citing *Whitley v. Senkowski*, 317 F.3d 223 (2d Cir.2003) and *Pagan v. Keane*, 984 F.2d 61 (2d Cir. 1993)).) Petitioner further requests an evidentiary hearing and that counsel be appointed to contact his trial counsel and determine if the police reports had in fact been turned over to his trial counsel and, if so, trial counsel's reasons for not using the reports at trial.[3] (Pet. Recons. Mem. 7.)

Petitioner's arguments do not meet the standard for granting reconsideration. Petitioner has not shown that (1) the Court overlooked any relevant controlling decisions or (2) the Court overlooked critical facts. *See Shrader*, 70 F.3d at 257.

#### i. The Court Did Not Overlook Controlling Decisional Law

The Court denied Petitioner's habeas petition, including Petitioner's request for an evidentiary hearing, because the petition did not fall within the statute of limitations imposed by the AEDPA. *Diaz*, 2012 WL 4447357, at *9. The Court concluded that Petitioner could not make the requisite threshold showing of actual innocence necessary to excuse his untimely filing of the petition, applying the standard articulated by the Supreme Court in *Schlup v. Delo* and the Second Circuit Court in *Rivas v. Fischer*. *See Diaz*, 2012 WL 4447357, at *6–8 (citing *Schlup*, 513 U.S. at 324, 115 S.Ct. 851 and *Rivas*, 687 F.3d at 541). Because the petition was barred by the AEDPA-imposed statute of limitations, the Court did not reach the merits of Petitioner's claims. *See id.* at *4 ("Before proceeding to the merits of the instant petition, the Court must consider whether the petition was timely-filed.").

In a supplemental letter to his motion for reconsideration, Petitioner cites two Second Circuit decisions that he characterizes as controlling law that were not followed by this Court in its September 24, 2012 Decision. (Pet. Supp. 1, 3 (citing *Whitley*, 317 F.3d 223 and *Pagan*, 984 F.2d 61).) The first case cited by Petitioner,

---

**3.** Petitioner further argues that the Court incorrectly concluded that the police records proffered by Petitioner were not "newly discovered evidence" that could have supported a hypothetical petition for habeas under § 2244(d)(1)(D) (Pet. Recons. Mem. 2.); *see Diaz v. Bellnier*, No. 08–CV–4009, 2012 WL 4447357, at *4 n. 4 (E.D.N.Y. Sept. 24, 2012). Petitioner misunderstands the Court's comment. Rather than dismissing the merits of Petitioner's *Schlup* claim of actual innocence on the basis that he did not present "newly discovered evidence," the Court noted that Petitioner had not asserted habeas claims on the basis of newly discovered evidence that comprised the factual predicate of a § 2244(d)(1)(D) claim. The Court further noted that if Petitioner had asserted such a substantive claim, the evidence proffered could not be characterized as "newly discovered" for purposes of satisfying § 2244(d)(1)(D). *See Diaz*, 2012 WL 4447357, at *8 n. 4.

*Pagan v. Keane,* held that district courts retain discretion to hold an evidentiary hearing *on the merits* of a habeas petition, even when one is not required. *Pagan,* 984 F.2d at 63–64. Because the September 24, 2012 Decision did not address the merits of Petitioner's habeas claims, but rather only addressed the question of whether Petitioner had met the *Schlup* threshold showing of "actual innocence," *Pagan* is not dispositive in determining whether an evidentiary hearing is required. Neither *Pagan* nor any controlling authority supports the proposition that, absent a showing of substantial support for the actual innocence claim, a habeas petitioner seeking to pass through the *Schlup* "actual innocence" gateway to have otherwise procedurally-barred habeas petition heard on its merits is entitled to an evidentiary hearing to develop the evidence necessary to establish actual innocence.[4] While courts retain discretion to order an evidentiary hearing to assist in the development of evidence of actual innocence sufficient to meet the *Schlup* threshold, such a hearing is only justified if there is "substantial support" for Petitioner's evidence. *See Lopez v. Miller,* 906 F.Supp.2d 42, 54 (E.D.N.Y.2012) (granting evidentiary hearing where Petitioner submitted recantation of prosecution's key witness testimony and sworn statements from two alibi witnesses in support of his *Schlup* claim of "actual innocence"); *see also Walker v. McDaniel,* 495 Fed.Appx. 796, 798 (9th Cir.2012) (concluding that evidentiary hearing was required where habeas petitioner presented an affidavit from a third party taking responsibility for the shooting for which petitioner was convicted, in order to permit an assessment of the credibility of the affiant); *Bannister v.*

*Delo,* 100 F.3d 610, 617 (8th Cir.1996) (denying petitioner's application for an evidentiary hearing to further develop the evidence provided to support his *Schlup* claim of actual innocence—affidavits from character witnesses presenting alternate theories of the crime—and concluding that "the actual innocence gateway through a procedural bar is not intended to provide a petitioner with a new trial, with all the attendant development of evidence, in hopes of a different result. Rather, it is an opportunity for a petitioner, aggrieved by an allegedly defective trial and having inexcusably defaulted the available remedies, to raise such a strong doubt to his guilt that, in hindsight, we cannot have confidence in the trial's outcome unless it was indeed free of harmless error.").

As for the second case cited by Petitioner, *Whitley v. Senkowski,* it is a 2003 case which addressed whether *Schlup* requires an actual innocence exception to the AEDPA-imposed one-year statute of limitations, and articulated factors for the lower court in that case to consider when determining whether the petitioner was entitled to have the *Schlup* standard applied in the context of his procedurally-barred habeas claims. *Whitley,* 317 F.3d at 225–26. Since *Whitley* was decided in 2003, the Second Circuit has held in *Rivas v. Fischer* that *Schlup* does require an "actual innocence" exception to procedural bars in habeas claims, and has articulated factors for district courts to consider in deciding whether the *Schlup* threshold has been met. *Rivas,* 687 F.3d at 540 ("[W]e hold that a petitioner who satisfies the Supreme Court's actual-innocence standard may pass through the *Schlup* gateway and have his substantive claims heard on the merits,

---

**4.** Petitioner also emphasizes the similarities between the facts of *Pagan* and the facts that gave rise to Petitioner's underlying constitutional claim. The Court reiterates that be-

cause it cannot reach the merits of Petitioner's claim, the Second Circuit's holding in *Pagan* is inapposite.

notwithstanding an otherwise unexcused delay in filing his habeas petition.").[5] The Court's September 24, 2012 Decision applied the factors articulated in *Rivas*— namely, whether Petitioner had presented "credible and compelling" evidence of actual innocence sufficient to warrant an equitable exception to the statute of limitations and an assessment of the habeas claims on the merits. *See Diaz*, 2012 WL 4447357, at *6–8 (citing, *inter alia, Rivas*, 687 F.3d at 541). Because *Whitley* was superseded by *Rivas, Whitley* does not represent a controlling decision overlooked by this Court in its denial of the petition.

In sum, Petitioner has not established that the Court overlooked any "controlling decisions ... that might reasonably be expected to alter the conclusion reached by the court," and thus Petitioner is not entitled to reconsideration of the Court's September 24, 2012 Decision on this basis. *See Shrader*, 70 F.3d at 257.

### ii. The Court Did Not Overlook Important Data or Factual Matters

■ Nor can Petitioner establish that the Court overlooked data or factual matters that, "had they been considered, might have reasonably altered the result before the court." *See Schweiloch*, 2012 WL 2277687, at *1. Petitioner's central argument is that the Court did not adequately discuss specific facts contained in the police reports that formed the basis for Petitioner's *Schlup* claim of actual innocence. (Pet. Recons. Mem. 1–3.) In order to succeed on a motion for reconsideration, a moving party must show that a court overlooked data or factual matters entirely—simply arguing that the discussion of those matters was inadequate will not suffice. *See Moore v. T–Mobile USA, Inc.,* No. 10–CV–527, 2013 WL 55799, at *3 (E.D.N.Y. Jan. 2, 2013) ("The fact that this Court did not find that this particular argument merited discussion should not be misconstrued as evidence that this Court overlooked this argument."); *United States v. N.Y.C. Transit Auth.,* No. 04–CV–4237, 2011 WL 4596155, at *1 (E.D.N.Y. Sept. 30, 2011) (rejecting petitioner's argument that the court overlooked undisputed facts in a previous order when the court "expressly rejected the very argument that the [petitioner] now reiterates" with respect to those facts).

■ As explained by the Court in its September 24, 2012 Decision, this Court reviewed the evidence proffered by Petitioner—including police reports documenting the investigation of the murders for which Petitioner was convicted—and concluded that these were not sufficient to meet the *Schlup* "actual innocence" threshold, justifying an exception to the statute of limitations that barred Petitioner's claim. The standard articulated by the Supreme Court in *Schlup* has two prongs. First, the claim must be "credible." "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific

**5.** In May 2013, the Supreme Court held that the *Schlup* "actual innocence" gateway applies in the context of the AEDPA-imposed statute of limitations. *See McQuiggin v. Perkins,* 569 U.S. ——, ——, 133 S.Ct. 1924, 1935, 185 L.Ed.2d 1019 (2013) ("To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' ") (quoting *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). Because *McQuiggin* adopted the *Schlup* standard, which was the standard applied by this Court in its September 24, 2012 Decision, *McQuiggin* does not represent a new controlling decision that requires a reconsideration of the Court's decision.

evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. Second, the claim must be "compelling," so that, when viewed in the light of all the available evidence, it is "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327, 115 S.Ct. 851. To meet the *Schlup* standard, a petitioner must establish a claim that is *both* credible *and* compelling. *Rivas*, 687 F.3d at 541 (citing *House v. Bell*, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)).

The Supreme Court recently reiterated that the standard for passing through the "actual innocence" gateway to overcome a procedural bar is "demanding." *McQuiggin v. Perkins*, 569 U.S. ——, ——, 133 S.Ct. 1924, 1936, 185 L.Ed.2d 1019 (2013) ("We stress once again that the *Schlup* standard is demanding. The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error.' " (quoting *Schlup*, 513 U.S. at 316, 115 S.Ct. 851)). Evidence that has been rejected by courts as insufficient to meet this standard includes: arguments that a Petitioner "was never heard" on a point, *Diaz v. United States*, No. 11–CV–2248, 2012 WL 2864526, at *4 (S.D.N.Y. July 12, 2012); general "[a]llegations of insufficient evidence and coerced confessions," *Thompson v. Zwierzyna*, No. 12–CV–123, 2012 WL 5269225, at *6 (E.D.Pa. Aug. 23, 2012), *report and recommendation adopted sub nom. Thompson v. Southers*, No. 12–CV–123, 2012 WL 5269261 (E.D.Pa. Oct. 25, 2012); exculpatory letter written by a cooperating witness that had been withheld by prosecution and that undermined the credibility of another prosecution witness, *Donato v. United States*, No. 09–CV–5617, 2012 WL 4328368 (E.D.N.Y. Sept. 20, 2012); unsworn, unofficially translated statement implicating another person in the crime for which petitioner was convicted, *Melendez v. Lempke*, No. 09–CV–4373, 2012 WL 3887093 (E.D.N.Y. Sept. 7, 2012); and " '[n]ewly discovered' affidavits and phone records offering what is claimed to be a conflicting narrative to the one presented" by a key witness at trial, *DiMattina v. United States*, No. 13–CV–1273, 949 F.Supp.2d 387, 421, 2013 WL 2632570, at *32 (E.D.N.Y. June 13, 2013). In *Rivas*, the Second Circuit noted that nonscientific evidence of a petitioner's innocence, including "evidence that [the victim] was involved in an intimate relationship with a man other than Rivas around the time of her murder, that she had lodged a complaint against a coworker not long before her death, and that one of her neighbors had been arrested for burglary and was known to peer through windows, might suggest that the police failed to pursue other leads in the investigation, but does not compellingly point to Rivas's innocence. The evidence, taken together, raises doubts about Rivas's guilt, but it does not, in isolation, so undermine the State's circumstantial evidence as to satisfy the *Schlup* standard." *Rivas*, 687 F.3d at 545–46.

■ As with these cases, the Court found that Petitioner's evidence of actual innocence did not meet the *Schlup* standard in that it was neither "credible" nor "compelling." *Diaz*, 2012 WL 4447357, at *7. As the Court explained, Petitioner failed to establish a "credible" claim because the evidence relied on by Petitioner, which, as he admits, are "primarily based upon the police reports," (Petition 14), is not the kind of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" required to meet the first *Schlup* prong as "new reliable

evidence." *Diaz*, 2012 WL 4447357, at *7. Even if the police reports could be considered "new" in the sense that they were not presented at trial, *see Rivas*, 687 F.3d at 543 (explaining that "new" reliable evidence for purposes of a *Schlup* claim is "evidence not heard by the jury"), they are simply not the *type* of evidence that meet the *Schlup* requirement of credible and reliable new evidence. Evidence that courts have found to be sufficient to satisfy this first *Schlup* prong include: signed, notarized and sworn statements of alibi witnesses, *Lopez v. Miller*, 915 F.Supp.2d 373, 401 (E.D.N.Y.2013); written recantation of prosecution's sole witness, *id.* at 409; unchallenged testimony of a respected forensic pathologist that murder took place at a time that petitioner had an unchallenged alibi, *Rivas*, 687 F.3d at 543; and DNA testing, *House*, 547 U.S. at 540, 126 S.Ct. 2064.

Because Petitioner's proffered evidence does not constitute the type of "new reliable evidence" held by courts to satisfy the first prong of the *Schlup* standard, on this basis alone, Petitioner is not entitled to an equitable exception to the AEDPA-imposed statute of limitations. The Court did, however, consider the hypothetical situation, "assum[ing], *arguendo*, that the police reports could be considered new evidence," and concluded that the evidence also did not meet the "compelling" prong of *Schlup*. *Diaz*, 2012 WL 4447357, at *7–8. Despite Petitioner's contention that the Court overlooked key factual issues here,

the Court did consider the evidence and rejected the Petitioner's argument. *See id.* at *7 ("The Court has reviewed the police report excerpts submitted by Petitioner, along with the trial record and the transcribed video confessions of Petitioner and his co-defendant, and does not find the police report to present any reliable evidence of Petitioner's innocence.").

The police reports presented by the petitioner offer several novel factual matters that Petitioner argues were not presented to the jury, including, *inter alia*, that the statement made to the police by the victim's father on the night of the murder was inconsistent with the statement he made at trial; that the police interviewed a neighbor in the building who reported seeing two Hispanic males in the apartment building approximately 90 minutes prior to the occurrence of the murders, knocking on the door of another family with the same last name as the victims; and the complete statements of the two informants to police.[6] (Petition 3; Petition Ex. A at 7; Petition Ex. B at 26, 34–35.)

■■ As discussed in the Court's September 24, 2012 Decision, the proffered evidence is not "compelling" under *Schlup*. "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have rea-

---

**6.** Respondent correctly notes that these documents and statements are all hearsay. (Resp. Opp. Recons. 3); *see also* Fed.R.Evid. 801(c) (defining "hearsay" as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement"). However, the Supreme Court has made clear that, in the context of the *Schlup* "actual innocence" inquiry, "the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted) (citing *Schlup*, 513 U.S. at 327–28, 115 S.Ct. 851). Thus, the Court considered the substance of the police reports in evaluating Petitioner's claim of actual innocence.

sonable doubt.'" *Rivas,* 687 F.3d at 541 (quoting *House,* 547 U.S. at 521, 538 126 S.Ct. 2064). *See also Kimbrough v. Bradt,* No. 12–CV–0034, 949 F.Supp.2d 341, 354, 2013 WL 2545379, at *7 (N.D.N.Y. June 11, 2013) ("The meaning of actual innocence ... does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that *no reasonable juror would have found the defendant guilty.*" (alteration in original) (emphasis added) (quoting *Schlup,* 513 U.S. at 329, 115 S.Ct. 851)).

The evidence does introduce additional inconsistencies between the statements of testifying witnesses, the physical evidence from the crime scene, and the confessions of Petitioner and his co-defendant, and highlights the absence of evidence put forward by the prosecution to corroborate Petitioner's confession, a point raised by his counsel at trial.[7] However, these inconsistencies, like the ones apparent to the jury at the time of Petitioner's trial,[8] do not move the case into the realm in which no reasonable juror would have found guilt beyond a reasonable doubt. A far more robust showing of innocence is required to meet the second prong of the *Schlup* standard. *See, e.g., House,* 547 U.S. at 541, 126 S.Ct. 2064 (finding that DNA evidence demonstrating that the petitioner was not the source of semen found on murdered victim meets the "compelling" prong because it rebutted "a central theme in the State's narrative linking House to the crime," which was that the petitioner's motive for the murder was sexual assault); *Philbert v. Brown,* No. 11–CV–1805, 2012 WL 4849011, at *7 (E.D.N.Y. Oct. 11, 2012) (rejecting sworn affidavit of Petitioner's girlfriend providing an alibi as insufficient to meet the "compelling" prong of *Schlup,* in light of contradictory eyewitness testimony identifying petitioner as the assailant); *Lawrence v. Greene,* No. 06–CV–0202, 2011 WL 1327128, at *7 (E.D.N.Y. Mar. 31, 2011) (rejecting alibi affidavits from Petitioner's sister, girlfriend and co-defendant because "[t]he other evidence presented against Petitioner at trial might prompt a reasonable juror to conclude that Petitioner participated in the robbery despite the alibi provided by Petitioner's friends and relatives."); *Madison v. Hulihan,* No. 09–CV–337, 2012 WL 1004780, at *7 (E.D.N.Y. Mar. 23, 2012) (holding that evidence that testifying officer falsely told a prior grand jury investigation that he had never lost sight of the perpetrator during pursuit was insufficient to meet "compelling" prong of *Schlup,* where trial jury heard officer's testimony that he had in fact monetarily lost sight of the perpetrator during pursuit, and still found petitioner guilty). The Second Circuit has held that a signed statement and a police report detailing the substance of an interview police conducted with a witness that contradicted the prosecution's main theory of the case were not sufficient for a

---

**7.** During summation, counsel for Petitioner emphasized that there was not "one scintilla of evidence, some scientific evidence or something else to corroborate what had happened here," that no fingerprints had been found, and that the confessions did not fit the Medical Examiner's evidence of the wounds inflicted on the bodies. (Resp. Opp. Petition Ex. A1, Trial Transcript ("Tr.") 237–40.)

**8.** At trial, the jury in Petitioner's criminal case viewed the videotaped confessions of both co-defendants, which contained numerous inconsistencies with each other. (Tr. 318–19; Resp. Ex. F.) To the extent the confessions were inconsistent with the crime scene, the jury also had the opportunity to view photographs from the crime scene. (Tr. 29–30.) The jury also heard the testimony of the Petitioner in which he explained that police fed him the details of a story to comprise his confession, as well as his counsel's summation characterizing his confession as coerced. (Tr. 183–88; 233–38.)

finding of actual innocence under *Schlup,* where the content of that evidence did not directly contradict the overall theory of guilt presented by the prosecution at petitioner's trial. *Foster v. Phillips,* 326 Fed. Appx. 597, 598–99 (2d Cir.2009) (explaining that "Foster's new evidence showing that Hale rather than Foster shot the bullet that killed Venson does nothing to show that Foster did not act as Hale's accomplice," one of the theories of guilt presented by the prosecution at the petitioner's trial).

In sum, the fact that the police records offered by Petitioner do not meet the first prong of the *Schlup* assessment as "new reliable evidence" was a sufficient basis on which Petitioner's habeas petition was denied. But even assuming that the police records did meet the first prong of *Schlup,* the evidence presented by Petitioner does not meet the second prong: that, after considering "all the evidence, old, and new, incriminating and exculpatory," it is more likely than not that no reasonable juror, in light of the new evidence, could have found Petitioner guilty beyond a reasonable doubt. *See Schlup,* 513 U.S. at 324, 115 S.Ct. 851; *House,* 547 U.S. at 538, 126 S.Ct. 2064. The evidence does not rise to the "extraordinary" showing required by *Schlup. See House,* 547 U.S. at 538, 126 S.Ct. 2064 ("[I]t bears repeating that the *Schlup* standard is demanding and permits review only in the 'extraordinary' case." (quoting *Schlup,* 513 U.S. at 327, 115 S.Ct. 851)). For this reason the Court found that Petitioner could not pass through the *Schlup* gateway, and denied Petitioner's habeas petition as time-barred.

While Petitioner points out that this Court did not consider his constitutional arguments of prosecutorial misconduct in its September 24, 2012 Decision, the Court reiterates that the *Schlup* gateway is narrowly limited to an assessment of whether a petitioner is entitled to an equitable exception to the statute of limitations because he has presented new reliable evidence of actual innocence. This assessment is separate from the merits of the constitutional claims which, in this case, are Petitioner's assertions of ineffective assistance of counsel and prosecutorial misconduct. Because Petitioner's claims fall outside the AEDPA statute of limitations, this Court is barred from evaluating the merits of those claims.

Finally, although the Court retains discretion to appoint counsel to represent petitioner pursuant to the Criminal Justice Act, because Petitioner has not presented substantial support for an "actual innocence" claim, Petitioner's application for appointment of counsel is denied. *See* Criminal Justice Act, 18 U.S.C. § 3006A(a)(2) ("Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28."); *United States v. Haouari,* No. 00–CR–15, 2013 WL 4565298, at *1 (S.D.N.Y. Aug. 28, 2013) ("The paramount factor considered by courts in determining whether to appoint counsel to indigent habeas petitioners is 'whether the indigent's position seems likely to be of substance.'" (quoting *Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir.1997))).

Petitioner has not demonstrated that the Court overlooked any law or fact in its September 24, 2012 Decision denying Petitioner's habeas petition as time-barred. Consequently, Petitioner is not entitled to the "extraordinary remedy" of reconsideration of this Court's September 24, 2012 Decision. *See Stoner,* 2013 WL 2425137, at *1 ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined

simply because [a party] is dissatisfied with the outcome of his case." (alteration in original) (citations and internal quotation marks omitted)).

## III.  Conclusion

For the reasons set forth above, the Court denies Petitioner's motion for reconsideration, and the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).  Petitioner's request for appointment of counsel is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).